1  | Robert A. Bailey (#214688)
   |   rbailey@afrct.com
2  | Sharon K. Brown (#176706)
   |   sbrown@afrct.com
3  | ANGLIN, FLEWELLING, RASMUSSEN,
   | CAMPBELL & TRYTTEN LLP
4  | 199 S. Los Robles Avenue, Suite 600
   | Pasadena, California 91101-2459
5  | Tel: (626) 535-1900; Fax: (626) 577-7764
6  | Attorneys for Defendant
   | Wells Fargo Bank, N.A.
7
8
9
10

**FILED**

11 JAN 12 PM 2:00

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

11  | GORDON M. GREENFIELD,
12  |              Plaintiff,
13  | vs.
14  |
15  | WELLS FARGO BANK, NA, A NATIONAL
    | ASSOCIATION, NDEX WEST, LLC, a
16  | DELAWARE LIMITED LIABILITY
    | COMPANY, and DOES 1 to 10, inclusive,
17  |
18  |              Defendants.

Case No.:

**CV11 0353 GW (AGRx)**

NOTICE OF REMOVAL BY
DEFENDANT WACHOVIA PURSUANT
TO 28 U.S.C. §1332 [DIVERSITY
JURISDICTION]

19  TO THE CLERK OF THE ABOVE-ENTITLED COURT AND THE HONORABLE UNITED

20  STATES DISTRICT JUDGE:

21          PLEASE TAKE NOTICE that defendant Wells Fargo Bank, N.A., a national association

22  ("Wells Fargo") hereby provides Notice of Removal based on diversity of citizenship, pursuant to

23  28 U.S.C. §1332, and hereby removes to this Court the state court action described below.

24  1.     THE STATE COURT ACTION.

25          On or about December 7, 2010, Case Number 108399, was filed in the Superior Court of

26  the State of California for the County of San Luis Obispo (the "State Court Action").  Neither

27  Wachovia nor NDEx have appeared in the State Court Action.  A copy of the Complaint in the

28  State Court Action is attached hereto as Exhibit A.  Attached as Exhibit B are all other papers in

1    Wells Fargo's possession from the State Court Action, which were either filed by plaintiff or

2    issued by the Court.

3    2.    JURISDICTION.

4         A.    Diversity of Citizenship.  This Court has jurisdiction of this case under 28 U.S.C.

5    §1332 because the citizenship of the parties is entirely diverse.

6         Plaintiff, Gordon M. Greenfield is a citizen of California based on domicile, as he alleges

7    residency in San Luis Obispo County.  (Comp. ¶1)  *Heinz v. Havelock*, 757 F.Supp. 1076, 1079

8    (C.D. Cal. 1991) (residence and property ownership a factor in domicile for diversity

9    jurisdiction); *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994)

10   ("Residence alone is not the equivalent of citizenship, but the place of residence is prima facie the

11   domicile.")

12        Wells Fargo Bank, N.A., successor by merger to Wells Fargo Bank Southwest, N.A. f/k/a

13   Wachovia Mortgage, FSB and World Savings Bank, FSB is a citizen of the state where its main

14   office is located.  *Wachovia Bank v. Schmidt*, 546 US 303, 306-307 (2006).  Wells Fargo is a

15   citizen of South Dakota with its main office located in Sioux Falls, South Dakota.  Attached

16   hereto as Exhibit C are true and correct copies of the FDIC Profile and Articles of Association for

17   Wells Fargo Bank, N.A.  Wells Fargo is a citizen of South Dakota for purposes of diversity.

18   *Cochran v. Wachovia Bank, N.A.* 2010 U.S. Dist. LEXIS 38379 (C.D. Cal. 2010); *DeLeon v.*

19   *Wells Fargo Bank* NA 2010 U.S. Dist. LEXIS 62499 (N.D. Cal 2010) and *Nguyen v. Wells Fargo*

20   *Bank, N.A., et al.,* 2010 U.S. Dist. LEXIS 113246, *10-*15 (N.D. Cal. 2010).

21        Defendant NDeX West, LLC (NDeX) is a single member LLC organized in Delaware and

22   headquartered in Texas.  National Default Exchange Holdings, LP (NDeX Holdings), the

23   manager and sole member of NDeX, is organized in Delaware and headquartered in Texas.  Its

24   general partner, National Default Management, Inc. (NDeX Management), is organized in

25   Delaware and headquartered in Texas.  Both NDeX Holdings LP and NDeX Management are

26   wholly-owned, directly or indirectly, by American Processing Company, LLC (APC), a Michigan

27   limited liability company.  APC is owned 94% by the Dolan Company (formerly Dolan Media

28   Company), a publicly-traded Delaware corporation (NYSE:DM) headquartered in Minnesota, and

NOTICE OF REMOVAL BY WACHOVIA

1  6% by individual investors all of whom are citizens of Texas. Accordingly, NDeX and its

2  members and partners are citizens of Delaware, Texas, Michigan, and Minnesota, but not

3  California. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006)

4  (citizenship of partnerships and limited liability companies determined by the citizenship of its

5  partners and members, respectively).

6      As established by these facts, there is complete diversity of citizenship between plaintiff

7  and defendants under 28 U.S.C. §1332(a).

8      B.    Amount in Controversy. Generally, "[t]he amount in controversy is determined

9  from the allegations or prayer of the complaint." Schwarzer, *Fed. Civ. Pro. Before Trial, supra*, ¶

10  2:450 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938), which held

11  that an inability to recover an amount adequate to give the court jurisdiction does not oust the

12.  court of jurisdiction). "In actions seeking declaratory or injunctive relief, it is well established

13  that the amount in controversy is measured by the value of the object of the litigation." *Hunt v.*

14  *Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) superseded by statute on other

15  grounds as stated in *United Food & Commer. Workers Union Local 751 v. Brown Group*, 517

16  U.S. 544, 557 (1996). "If the primary purpose of a lawsuit is to enjoin a bank from selling or

17  transferring property, then the property is the object of the litigation." *Reyes, et al. v. Wells Fargo*

18  *Bank, N.A.*, 2010 U.S. Dist. LEXIS 113821, *12-13 (N.D. Cal. 2010)(M.J. Spero presiding).

19      The amount in controversy is more than $75,000 because plaintiff seeks "a temporary

20  restraining order, a preliminary and a permanent injunction, all enjoining defendants, WEST and

21  WELLS FARGO BANK, and all persons acting under, for, or in concert with them, from selling

22  the trust property or attempting to sell it or causing it to be sold at a private foreclosure sale."

23  (Comp., Prayer ¶¶5 and 8). This meets the amount in controversy threshold. "[S]ince Plaintiffs

24  seek injunctive relief, the amount in controversy is measured by the value of the object of the

25  litigation." *Cabriales v. Aurora Loan Servs.*, 2010 U.S. Dist. LEXIS 24726 * 11 (N.D. Cal.

26  2010)(M.J. James presiding)(denying motion to remand because amount in controversy met in

27  action seeking injunctive relief; loan there was $465,000); *Reyes, supra* at * 16 (amount in

28  controversy satisfied where injunctive relief sought in wrongful foreclosure case).

1    Here, the subject loan in the State Court Action made by Wells Fargo was in the amount

2  of $569,000.00.  Attached hereto as <u>Exhibit D</u> is a true and correct copy of the Deed of Trust

3  dated April 19, 2006 and recorded against the subject real property commonly described as 110

4  Tierra Vista, Paso Robles, California 93446 ("Property") as document number 18639140 with the

5  San Luis Obispo County Recorder.

6  3.  <u>TIMELINESS</u>.

7    This Notice is timely because it is filed within thirty days of service of the summons and

8  complaint, which occurred on or about December 15, 2010, as required by 28 U.S.C. §1446(b).

9  Defendant NDeX West, LLC confirms that it was served on December 15, 2010 and filed a

10  Declaration of Non-Monetary Status January 7, 2011; but nonetheless consents to the removal, by

11  a joinder filed simultaneously with this Notice.  The other defendants are Does, which are ignored

12  for diversity purposes.  28 U.S.C. §1332.  Thus, no other joinders are required to perfect removal

13  of the State Court Action.  *Salveson v. Western States Bankcard Ass'n*, 731 F.2d 1423, 1429 (9th

14  Cir. 1984).

15  4.  <u>OTHER PERTINENT INFORMATION</u>

16    A.  Pursuant to 28 U.S.C. §1446(a), Defendant files this Notice in the District Court of

17  the United States for the district and division within which the State Court Action is pending.

18    B.  Pursuant to 28 U.S.C. §1446(d), a copy of this Notice with its attachments will

19  promptly be served on plaintiff in the State Court Action, and notice thereof will be filed with the

20  clerk of the San Luis Obispo County Superior Court.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1    WHEREFORE, Defendant hereby removes San Luis Obispo County Superior Court Case

2    Number 108399 to the United States District Court for the Central District of California –

3    Western Division.

4                                                    Respectfully submitted,

5    Dated:  January 11, 2011                        ANGLIN, FLEWELLING, RASMUSSEN,
                                                      CAMPBELL & TRYTTEN LLP
6

7                                                    By: _____
                                                          Sharon K. Brown
8                                                         sbrown@afrct.com
                                                      Attorneys for Defendant,
9                                                     Wells Fargo Bank, N.A.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W:\LITIG\95451\000562\00089006.DOC            5                    NOTICE OF REMOVAL BY WACHOVIA

1  ADAM R. FAIRBAIRN (SBN 168204)
   Attorney at Law
2  819 - 12th Street, Suite 211
   Paso Robles, CA 93446
3  Tel.: 805-238-7688
   Fax: 805-238-7497
4
   Attorney for Plaintiff, Gordon M. Greenfield
5

**FILED**

DEC 07 2010

SAN LUIS OBISPO SUPERIOR COURT
BY: _Ashely Eriaso_
      Ashely Benedo, Deputy Clerk

6

**COPY**

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    IN AND FOR THE COUNTY OF SAN LUIS OBISPO

10  GORDON M. GREENFIELD,            )   CASE NO. CV    **108399**
                                     )
11          Plaintiff,               )   COMPLAINT FOR:
                                     )
12  vs.                              )   1) BREACH OF CONTRACT;
                                     )
13  WELLS FARGO BANK, NA. A          )   2) BREACH OF CONTRACT – PROMISSORY
    NATIONAL ASSOCIATION, NDEX       )   ESTOPPEL;
14  WEST, LLC, a DELAWARE LIMITED    )
    LIABILITY COMPANY, and DOES 1 to )   3) DECLARATORY RELIEF;
15  10 inclusive,                    )
                                     )   4) FOR TEMPORARY RESTRAINING ORDER,
16          Defendants.              )   PRELIMINARY AND PERMANENT
                                     )   INJUNCTION;
17                                   )
                                         5) VIOLATIONS OF THE UNFAIR PRACTICES
18                                       ACT;

19                                       6) CONTRACTUAL BREACH OF IMPLIED
                                         COVENANT OF GOOD FAITH AND FAIR
20                                       DEALING.

21                                       Judge: Hon. Martin Tangeman

22                                       Dept.: P-2

23                                       No Trial Date Set

24  Plaintiff Gordon M. Greenfield alleges the following Complaint:

25  1.   Plaintiff, Gordon M. Greenfield (GREENFIELD), is an individual residing in San Luis

26       Obispo County, California, who currently owns 110 Tierra Vista, Paso Robles, CA

27       93446.

28  2.   GREENFIELD is informed and believes, and on that basis alleges that defendant WELLS

Page 1 of 9                          Complaint: GREENFIELD vs. WELLS FARGO BANK et. al.

1    FARGO BANK (WELLS) is a banking corporation federally chartered and doing

2    business in California.

3   3.   GREENFIELD is informed and believes, and on that basis alleges, that NDEX WEST

4    (WEST), LLC, a DELAWARE LIMITED LIABILITY COMPANY, is a wholly owned

5    subsidiary of WELLS doing business in California.

6   4.   By reason defendants' relationship with one another, with WEST being a wholly owned

7    subsidiary of WELLS, and by reason of said relationship there exists a unity of interest

8    and ownership between WELLS, as parent, and WEST as the subsidiary. There is such a

9    unity of interest and ownership between the parent and subsidiaries that their separate

10    personalities no longer exist. An inequitable result would otherwise occur if the parent is

11    not held for the acts of the wholly owned subsidiary. WEST has been relegated to the

12    status of merely being an instrumentality, agency, conduit and/or adjunct of WELLS.

13   5.   Additionally, Defendant, WEST is additionally named herein as an indispensable party as

14    substituted trustee under a deed of trust and the party conducting private foreclosure sale

15    TS No. 20100015007295 for WELLS.

16   6.   The true names and capacities, whether individual, corporate, associate, or otherwise, of

17    Does 1 through 10, inclusive, are unknown to GREENFIELD, who therefore sues the Doe

18    defendants by such fictitious names. GREENFIELD, upon information and belief, alleges

19    that, at all times mentioned herein, each of said Doe defendants; (i) was an agent of the

20    other defendants, and each of them, acting within the course and scope of such agency;

21    and/or (ii) acted in concert, collusion, and conspiracy with the other defendants, and each

22    of them, and otherwise participated in, intentionally benefited from, and is liable for the

23    acts conduct and omissions of the other defendants alleged in this Complaint.

24    GREENFIELD will amend this Complaint to show the true names and capacities of Does

25    1 through 10 when they have been ascertained.

26   7.   GREENFIELD is informed and believes, and upon that basis alleges, that at all times

27    herein mentioned, each defendant was the associate, partner, agent, subsidiary, or

28    employee of each of the remaining defendants, and that at all times herein mentioned,

1   each defendant was acting within the course and scope of such association, partnership,

2   agency or employment, and with the knowledge and consent of each such associate,

3   partner, principal or employer and the conduct of each defendant was consented to and

4   ratified by each remaining defendant.

**FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT**

**AGAINST WELLS FARGO BANK**

8.   GREENFIELD hereby realleges and incorporates by reference the allegations set forth in

all prior numbered paragraphs, inclusive.

9.   On or about February 15, 2000 and the plaintiff GREENFIELD was given news from his

employer that he was going to be forced to take two furlough days each month. Between

March and May of 2010, with the furlough days in force, and with rising gas prices,

GREENFIELD felt that it would be in his best interest to contact the defendant WELLS

and ask for a loan modification. Shortly thereafter GREENFIELD contacted the WELLS,

they sent to GREENFIELD a loan modification package so that he could modify his loan.

10.   The modification had the following terms and conditions:

   a.   GREENFIELD was to pay one year of payments at an increased rate of $3106 a
        month after he made an initial payment in July 2009 of $3400. These sums we
        more than GREENFIELD's initial monthly home payments.

   b.   After one year of GREENFIELD making the increased payments, the term for the
        deed of trust would be turned into a 40 year term, with a principle reduction and
        with 1 1/4 points being removed from the interest rate.

   c.   The monthly payment would be effectively reduced to $2400 a month.

   d.   At the time of the modification GREENFIELD was current on all of his payments.

11.   Shortly before or after the modification was agreed to GREENFIELD's employer then
      enforced a three-day a month furlough and a 10% increase in taxes, citing budget
      problems. This made for further financial hardships for GREENFIELD.

12.   Be that as it may, between July 1, 2009 and February 1, 2010 GREENFIELD made all
      payments. At the middle of February he contacted the lender once again and requested

1    that they had the remaining four payments of the initial 12, commuted to the end of the

2    note term, and to rapidly implement the $2400 a month payment as both GREENFIELD

3    and his wife were unable to meet the necessities of life while still being employed full-

4    time. GREENFIELD was reduced to rudimentary sustenance and had been doing so for

5    more than four months.

6  13.  WELLS then informed GREENFIELD through their agent that GREENFIELD spoke to

7    in February of 2010 that because he had made all of the payments at an increased sum

8    that they would be willing to offer the extension to GREENFIELD by adding the

9    remaining four payments to the end of the agreement, however the only way that they

10    would allow GREENFIELD to do so would be if GREENFIELD was "in distress" on the

11    loan. GREENFIELD, who was current on all of the payments, and had already made the

12    February 2010 payment, asked several times if this was the best thing to do. The WELLS

13    "loss mitigation specialist" that GREENFIELD spoke to stated that he was "pre-

14    qualified" for the extension so long as his loan was "in distress." GREENFIELD is a

15    correctional officer and not a professional lender of money for deed of trust transactions.

16    Relying upon the offer made by the WELLS "loss mitigation specialist," Mr. Greenfield

17    accepted the offer in order to obtain the lower payment immediately.

18  14.  To that end prior to the March payment being due, GREENFIELD received

19    documentation from WELLS to effectuate the agreed-upon of the accord and satisfaction

20    (extension of the four payments and the acceleration of the completion of the

21    modification from May of 2009).

22  15.  As per the agreement made on or about February 15, 2010, in order to be "in distress"

23    GREENFIELD did not pay either March or April payments of 2010.

24  16.  In June of 2010 GREENFIELD tendered the first payment of $2600 which was to be the

25    sum paid under the 40 year note that he had agreed to and additionally reached an accord

26    and satisfaction concerning in February of 2010.

27  17.  WELLS rejected the $2600 payment. Wells has rejected all payments tendered by

28    GREENFIELD since May of 2010.

Page 4 of 9                              Complaint: GREENFIELD vs. WELLS FARGO BANK et. al.

18. Plaintiff did not make the payments as requested, (March & April) which detrimentally harmed his credit rating and he did not place the home up for sale or auction with a real estate agent to take advantage of the housing prices of the second quarter of 2010.

19. The defendant WELLS denies that there is any agreement with GREENFIELD concerning the acceleration and the extension, to that end they are for closing on the plaintiff's home on December 22, 2010.

20. Plaintiff accepted the February 2010 offer of accordance satisfaction has made to him by plaintiff Wells. GREENFIELD fully performed everything on his part to be performed.

21. WELLS FARGO BANK has breached the agreement and has failed and refused to follow the accord and satisfaction concerning the loan, and has denied in bad faith that there ever was an agreement in February of 2010.

22. GREENFIELD has fully performed everything on his part to be performed, including the conditions precedent to the modification, except for those obligations that have been excused by defendant WELLS FARGO BANK's breaches herein.

23. Defendant WELLS FARGO BANK's breaches have proximately and actually caused GREENFIELD to suffer damages, all in an amount to be proved at trial, but in any event, in excess of the jurisdictional minimum of this Court.

24. The underlying promissory note which is the subject of the modification provides that the prevailing party in any action shall recover its reasonable attorney's fees and costs.

### SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT
### AGAINST WELLS – PROMOSSORY ESTOPPEL

25. GREENFIELD hereby realleges and incorporates by reference the allegations set forth in all prior numbered paragraphs, inclusive.

26. On or about February 15, 2010 WELLS through their agent, offered to GREENFIELD, because he had made all of the payments at an increased sum, that they would be willing to offer the extension to GREENFIELD by adding the remaining four payments to the end of the agreement, however the only way that they would allow GREENFIELD to do so would be if GREENFIELD was "in distress" on the loan. WELLS' "loss mitigation

1   specialist" told GREENFIELD he was "pre-qualified" for the extension so long as his

2   loan was "in distress." GREENFIELD is a correctional officer and not a professional

3   lender of money for deed of trust transactions.

4   27.   In so doing, WELLS FARGO BANK knew or should have known, that GREENFIELD

5   would be reasonably induced to rely on defendant's promise and representation and would

6   take acts detrimental to his interests as mentioned in Paragraph 18 above.

7   28.   WELLS FARGO BANK has not performed any part of its promise to modify the loan.

8   When GREENFIELD inquired about the accord and satisfaction, (the extension of the

9   four payments and the acceleration of the completion of the modification from May of

10   2009) defendant's representative falsely and in bad faith denied that there was ever an

11   agreement between the parties.

12   29.   As a proximate result of defendant, WELL's, failure to perform according to the promise

13   and representation that it made to plaintiff, plaintiff has suffered damage to his otherwise

14   excellent credit and actual damages in an unknown amount. Plaintiff will amend his

15   complaint when the actual amount is known or provide proof at trial.

16   30.   Injustice can be avoided only by enforcing defendant WELLS FARGO BANK's promise

17   and representation completely.

18   **THIRD CAUSE OF ACTION FOR DECLARATORY RELIEF**

19   31.   Plaintiff hereby realleges and incorporates by reference all the allegations set forth in all

20   prior numbered paragraphs, inclusive.

21   32.   An actual controversy now exists between GREENFIELD and defendants pertaining to

22   the loan modification and payments due. GREENFIELD contends that he satisfied all

23   agreed upon conditions required for the modification of the note in accordance with

24   WELLS FARGO BANK's published policy for permanent modifications. Defendant

25   WELLS FARGO BANK contends that there was no accord and satisfaction agreement.

26   33.   A judicial determination is necessary and appropriate at this time under the circumstances

27   in order that the parties may ascertain their respective rights as to the amounts owed and

28   the interest rate on the loan.

Complaint: GREENFIELD vs. WELLS FARGO BANK et. al.

**FOURTH CAUSE OF ACTION FOR TEMPORARY RESTRAINING ORDER,**

**PRELIMINARY AND PERMANENT INJUNCTION AND**

**DAMAGES AGAINST ALL DEFENDANTS**

34. Plaintiff hereby realleges and incorporates by reference all the allegations set forth in all prior numbered paragraphs, inclusive.

35. Defendant WELLS FARGO BANK has wrongly instructed its substituted trustee, defendant WEST, to proceed with a Trustee's sale of the first note secured by a deed of trust in violation of the modification and accord and satisfaction agreement.

36. GREENFIELD has demanded that the defendants stop, and each of them, their wrongful conduct described above. Defendants have refused and still refuse to refrain from their threatened conduct.

37. Defendant's wrongful conduct, unless and until enjoined and restrained by order of this court, will cause great and irreparable injury to plaintiff as plaintiff's ownership interest in the property will be terminated and junior lien holders will be wiped out.

38. Plaintiff has no adequate remedy at law for the injuries that are threatened because the property, which is a unique home, will be lost. It will be impossible for plaintiff to determine the exact amount of damage that he will suffer if defendant's conduct is not restrained.

39. As a proximate result of defendant's wrongful conduct, plaintiff has been damaged, and the full amount of the damage is not now known to plaintiff. Plaintiff will amend this complaint to state this amount when it becomes known, or on proof at trial.

**FIFTH CAUSE OF ACTION FOR A VIOLATION OF**

**THE UNFAIR PRACTICES ACT (Business & Professions Code Section 17000 et seq.)**

**AGAINST WELLS FARGO BANK**

40. Plaintiff hereby realleges and incorporates by reference the allegations set forth in all prior numbered paragraphs, inclusive.

41. Plaintiff is informed and believes and on said information and behalf herein alleges that defendants, WELLS FARGO BANK and WELLS, through their officers and/or duly

1  appointed employee/agent have engaged in a pattern of conduct that constitutes unlawful
2  business acts that are forbidden by California law. Plaintiff is informed and believes and
3  pursuant to said information and belief hereby alleges that as of July 2010, the Treasury
4  Department's most recent report on servicer performance under HAMP, WELLS FARGO
5  BANK had 46,732 permanent modifications. However Treasury estimates that the bank
6  has a pool of 247,638 eligible, with 156,332, 60-day-plus delinquent loans, making
7  WELLS in the top eight for loans subject to modifications. WELLS FARGO BANK has
8  granted permanent modifications to only about 18% of potential eligible borrowers.
9  HAMP is supposed to give borrowers who are in default or at risk of default a chance to
10  modify their mortgages and reduce monthly payments, usually by $500. Eligible
11  borrowers are supposed to be put into three-month trial modifications, and if they make
12  their payments the trial mod is supposed to become "permanent" for five years. A copy
13  of the HAMP Modification Activity Report by Servicer is attached hereto as Exhibit "A"
14  and incorporated herein. Defendant WELLS's advertising concerning HAMP and "In
15  House" loan Modifications is deceptive in that it states that WELLS will make the trial
16  modification permanent (5 years) after the three months of payments. They are not
17  abiding by this representation and are falsely inducing borrower into the trial modification
18  and then not following through just as in this case. Their pattern of behavior is deceptive.
19  Their advertising and actions are unfair and deceptive and the harm to victims far
20  outweighs any benefit that the trial modification is supplying. On or about February 15,
21  2010, WELLS made an agreement to modify plaintiff's loan if plaintiff allowed the loan
22  to go delinquent, and then paid $2,600 thereafter for 40 years. Defendant, WELLS
23  FARGO BANK, then failed and refused to issue the agreement from February 2010, and
24  unlawfully denied that an agreement existed.
25  42.   Defendant, WELLS FARGO BANK's, unlawful and unethical conduct has caused
26  damages to plaintiff in an amount unknown at this time. When the full extent of the
27  damage becomes known plaintiff will amend his complaint, or provide proof at trial,
28  Plaintiff is also entitled to statutory and civil damages against WELLS FARGO BANK

Page 8 of 9                          Complaint: GREENFIELD vs. WELLS FARGO BANK et. al.

1     for violation of Business & Professions Code Section 17200 et seq.

2    43.   Plaintiff is also entitled to injunctive relief pursuant to Business & Professions Code

3        Section 17203, to enjoin defendant, WELLS FARGO BANK's, unlawful, unfair and

4        fraudulent business act and practices in making offers to plaintiff to induce plaintiff to

5        breach the underlying note and significantly harm Plaintiff's interests.

6    **SIXTH CAUSE OF ACTION FOR BREACH OF COVENANT OF GOOD FAITH AND**

7    **FAIR DEALING AGAINST WELLS FARGO BANK**

8    44.   Plaintiff hereby realleges and incorporates by reference the allegations set forth in all

9        prior numbered paragraphs, inclusive.

10   45.   By engaging in the conduct alleged in Paragraphs 9 to 43, WELLS FARGO BANK

11       breached the implied covenant of good faith and fair dealing which each party owes to the

12       other in every contract.

13   46.   WELLS FARGO BANK has used it unequal bargaining power to harass and injure

14       plaintiff and has placed him in financial distress with the significant loss of equity in

15       Plaintiff's property caused by Defendants unlawful acts. all to the financial benefit of

16       defendant. Plaintiff reasonably relied on the representations of representatives of WELLS

17       FARGO BANK and changed his financial position to his detriment. Had plaintiff known

18       that WELLS FARGO BANK would not respect the accord and satisfaction he would

19       have paid the sums under the 12 month trial and secured an alternative source for the

20       necessities of life.

21   47.   The foregoing course of conduct and breach of the covenant of good faith and fair dealing

22       proximately caused harm to plaintiff in an amount unknown at this time. Plaintiff will

23       amend his complaint when the true damages are ascertained, or provide proof at trial.

24   WHEREFORE, Plaintiff prays judgment against defendants and each of them as follows:

25   First Cause of Action for Breach of Contract Against WELLS FARGO BANK

26       1. For compensatory damages according to proof.

27       2. For attorney's fees and costs.

28   Second Cause of Action for Breach of Contract Against WELLS FARGO BANK – Promissory

1   Estoppel

2         3. For judicial enforcement of defendant, WELLS FARGO BANK's, promise to modify

3   the loan as reasonably relied upon by plaintiff.

4   Third Cause of Action for Declaratory Relief Against WELLS FARGO BANK

5         4. For judicial declaration that the loan modification should be granted as agreed.

6   Fourth Cause of Action For Temporary Restraining Order, Preliminary And Permanent

7   Injunction and Damages Against All Defendants

8         5. For a temporary restraining order, a preliminary injunction and a permanent injunction,

9   all enjoining defendants, WEST and WELLS FARGO BANK, and all persons acting under, for,

10   or in concert with them, from selling the trust property or attempting to sell it or causing it to be

11   sold at a private foreclosure sale.

12         6. For attorney's fees and costs.

13         7. For attorney's fees and costs.

14   Fifth Cause of Action For a Violation Of The Unfair Practices Action (Business & Professions

15   Code Section 1700 et seq.) Against WELLS FARGO BANK

16         8. For a temporary restraining order, a preliminary injunction and a permanent injunction,

17   all enjoining defendants, WEST and WELLS FARGO BANK, and all persons acting under, for,

18   or in concert with them, from selling the trust property or attempting to sell it or causing it to be

19   sold at a private foreclosure sale.

20         9.  For compensatory damages according to proof.

21         10. For statutory penalties according to proof.

22   Sixth Cause of Action For Breach of Covenant of Good Faith And Fair Dealing Against

23   WELLS FARGO BANK

24         11. For compensatory damages according to proof.

25         12. For attorney's fees and costs.

26   On All Causes of Action

27         13. For plaintiff's reasonable attorney's fees.

28         14. For plaintiff's costs of suit, and

15. For such other and further relief as this court finds just and reasonable.

Dated: December 7, 2010



Adam R. Fairbairn, Attorney for Plaintiff

Page 11 of 9                                    Complaint: GREENFIELD vs. WELLS FARGO BANK et. al.

# EXHIBIT A

PAGE  17/44

FAIRBAIRN

8052387497

12/15/2010  13:45

# Making Home Affordable Program
### Servicer Performance Report Through July 2010

## Report Highlights

### Nearly 37,000 New Permanent Modifications in July
- Homeowners in permanent modifications are experiencing a median payment reduction of 36%, more than $500 per month.
- Homeowners in permanent modifications are guaranteed lower payments for five years, then fixed terms at current rates for the life of the loan.
- Trial modification starts were lower, as expected, as servicers transition to upfront verification of documentation.

### Servicers Continue to Work Through Aged Trial Population
- As servicers continue to review aged trials, the number of active trials initiated at least six months ago has decreased from 166,000 to 118,000. Two servicers account for half of the aged trials that have yet to be decisioned. Homeowners are not subject to foreclosure sale while decisions are being made.
- As servicers work through this population, they are making extensive efforts to obtain documentation. Servicers indicate that the remaining decisions on aged trial modifications should be made in August.
- The most common causes of cancellations include insufficient documentation, missed trial payments, or mortgage payments already less than 31% of the homeowner's income.
- Servicers reported that more than half of homeowners in canceled trials receive alternative modifications, become current, or pay off the loan completely.
- As a result of the requirement that servicers verify borrower eligibility through documentation prior to initiating trials on or after June 1, cancellation activity for new trials is expected to gradually decline. However, the number of new cancellations is expected to exceed the number of new permanent modifications for the next few months as servicers clear their backlog of aged trials.

### New Outreach Initiatives Launched to Educate Homeowners
- Treasury and HUD partnered with the Ad Council in a public service advertising campaign featuring homeowners who received HAMP modifications.
- The advertisements, launched in late July, are being distributed to more than 33,000 media outlets nationwide. The advertisements are available in English and Spanish.

## Inside:

HAMP Program Snapshot

Characteristics of Permanent Modifications

Servicer Activity

Disposition Path of Homeowners Canceled From HAMP Trials

Disposition Path of Homeowners Ineligible for HAMP Trials

Selected Outreach Measures

Homeowner Experience

HAMP Activity by State

HAMP Activity by Metropolitan Area

Modifications by Investor Type

List of Non-GSE Participants

Definitions of Compliance Activities


MAKING HO

PAGE 18/44

FAIRBAIRN

8052387497

12/15/2010  13:45

# Making Home Affordable Program
### Servicer Performance Report Through July 2010

| HAMP Activity: All Servicers | Total |
|---|---|
| **HAMP Eligibility** | |
| Eligible Delinquent Loans[2] | 3,075,066 |
| Eligible Delinquent Borrowers[2] | 1,456,353 |
| Trial Plan Offers Extended[3] | 1,553,925 |
| **Trial Modifications[9]** | |
| All Trials Started | 1,307,439 |
| Trials Reported Since June 2010 Report[4] | 24,572 |
| Trial Modifications Canceled (Cumulative) | 616,839 |
| Active Trials | 255,934 |
| **Permanent Modifications** | |
| All Permanent Modifications Started | 434,716 |
| Permanent Modifications Begun Since June 2010 Report | 36,695 |
| Permanent Modifications Canceled (Cumulative)[5] | 12,512 |
| Active Permanent Modifications | 421,804 |



HAMP Trials Started (Cumulative)

Source: HAMP system of record.
Note: Servicers may enter new trial modifications into the HAMP system of record anytime before the first permanent modification.



Permanent Modifications Started (Cumulative)

Source: HAMP system of record.

[2] Estimated eligible 60+ day delinquent loans as reported by servicers as of June 30, 2010, include conventional loans:
- in foreclosure and bankruptcy.
- with a current unpaid principal balance less than $729,750 on a one-unit property, $934,200 on a two-unit property, $1,129,250 on a three-unit property and $1,403,400 on a four-unit property.
- on a property that was owner-occupied at origination.
- originated on or before January 1, 2009.

Estimated eligible 60+ day delinquent loans exclude:
- FHA and VA loans.
- loans that are current or less than 60 days delinquent, which may be eligible for HAMP if a borrower is in imminent default.

For servicers enrolled after May 1, 2010 that did not participate in the 60+ day delinquency survey, the delinquency count is from the servicer registration form.

[3] The estimated eligible 60+ day delinquent borrowers are those in HAMP-eligible loans, minus estimated exclusions of loans on vacant properties, loans with borrower debt-to-income ratio below 31%, loans that fail the NPV test, properties no longer owner-occupied, manufactured housing loans with title/chattel issues that exclude them from HAMP, and loans where the servicer pooling and servicing agreements preclude modification. Exclusions for DTI and NPV eligibility are estimated using market analytics.

[4] As reported in the weekly servicer survey through July 29, 2010.

[5] Servicers may enter new trial modifications into the HAMP system of record anytime before the loan converts to a permanent modification.

[6] A permanent modification is canceled when the borrower has missed three or more consecutive monthly payments. Includes 272 loans paid off.

MAKING HOME AFFORDABLE

# Making Home Affordable Program

### Servicer Performance Report Through July 2010

## Modification Characteristics

- Aggregate reductions in monthly mortgage payments for borrowers in active trial and permanent modifications total more than $3.1 billion.

- The median savings for borrowers in permanent modifications is $513.09, or 36% of the median payment before modification.

## Permanent Modifications by Modification Step

| | |
|---|---|
| Interest Rate Reduction | 100% |
| Term Extension | 56.8% |
| Principal Forbearance | 29.3% |

## Select Median Characteristics of Permanent Modifications

| Loan Characteristic | Before Modification | After Modification | Median Decrease |
|---|---|---|---|
| Front-End Debt-to-Income Ratio[1] | 44.8% | 31.0% | -13.8 pct pts |
| Back-End Debt-to-Income Ratio[2] | 79.7% | 63.5% | -14.4 pct pts |
| Median Monthly Payment[3] | $1,426.13 | $839.16 | -$513.09 |

[1] Ratio of housing expenses (principal, interest, taxes, insurance and homeowners association and/or condo fees) to monthly gross income.
[2] Ratio of total monthly debt payments (including mortgage principal and interest, taxes, insurance, homeowners association and/or condo fees, plus payments on installment debts, junior liens, alimony, car lease payments and investment property payments) to monthly gross income. Borrowers who have a back-end debt-to-income ratio of greater than 55% are required to seek housing counseling under program guidelines.
[3] Principal and interest payment.

## Predominant Hardship Reasons for Permanent Modifica



[1] Includes borrowers who are employed but have faced a reduction in hours and/or wages, those who have lost their jobs.
Note: Does not include 17.3% of permanent modifications reported as Other.

## Loan Status Upon Entering Trial



Note: For all trial modifications started.
"At Risk of Default" includes borrowers up to 59 days delinquent at trial entry as those in imminent default. "In Default" refers to borrowers 60 or more days late

Note: Data on the performance and delinquency of permanent modifications, included in the June 2010 Servicer Performance R will be published quarterly.

PAGE 20/44

FAIRBAIRN

8052387497

12/15/2010 13:45

# Making Home Affordable Program
### Servicer Performance Report Through July 2010

## HAMP Modification Activity by Servicer

| Servicer | Estimated Eligible 60+ Day Delinquent Borrowers | Trial Plans Offers Extended | Active Trial Period Plans Started | Active Permanent Modifications | Permanent Modifications |
|---|---|---|---|---|---|
| American Home Mortgage Servicing Inc | 48,122 | 25,862 | 21,894 | 9,992 | 10,761 |
| Aurora Loan Services, LLC | 35,216 | 47,768 | 44,243 | 4,434 | 13,623 |
| Bank of America, NA[4] | 416,879 | 408,016 | 312,318 | 62,741 | 76,330 |
| Carrington Mortgage Services LLC | 3,529 | 3,743 | 3,110 | 751 | 2,109 |
| CitiMortgage, Inc. | 127,818 | 168,499 | 143,274 | 20,458 | 44,276 |
| GMAC Mortgage, Inc.[5] | 16,570 | 58,617 | 45,205 | 2,777 | 29,836 |
| Green Tree Servicing LLC | 5,949 | 7,431 | 6,432 | 1,686 | 2,806 |
| HomEq Servicing | 14,584 | 7,948 | 6,107 | 1,419 | 4,403 |
| J.P. Morgan Chase Bank, NA[6] | 215,640 | 263,553 | 208,270 | 37,566 | 58,489 |
| Litton Loan Servicing LP | 47,451 | 37,194 | 34,608 | 2,763 | 6,447 |
| Nationstar Mortgage LLC | 17,677 | 26,188 | 22,763 | 3,685 | 9,170 |
| Ocwen Financial Corp, Inc. | 31,440 | 26,269 | 28,144 | 5,991 | 17,403 |
| OneWest Bank | 42,697 | 61,249 | 44,635 | 15,141 | 17,334 |
| PNC Mortgage[7] | 17,742 | 22,122 | 18,036 | 1,915 | 3,009 |
| Saxon Mortgage Services, Inc.[8] | 24,211 | 45,292 | 34,774 | -3,206 | 10,815 |
| Select Portfolio Servicing | 17,332 | 61,585 | 39,011 | 3,516 | 15,808 |
| US Bank NA | 12,421 | 13,873 | 11,630 | 1,946 | 7,128 |
| Wachovia Mortgage, FSB[9] | 27,571 | 15,686 | 14,365 | 8,530 | 5,539 |
| Wells Fargo Bank, NA[10] | 156,332 | 247,638 | 177,267 | 22,338 | 46,732 |
| Other SPA servicers[11] | 11,592 | 14,850 | 13,719 | 3,754 | 7,153 |
| Other GSE Servicers[12] | 165,750 | NA | 70,463 | 19,985 | 30,639 |
| **Total** | **1,466,363** | **1,553,925** | **1,367,488** | **-255,934** | **421,834** |

*[Footnote text heavily degraded — left column]*

## Conversion Rate



Trial Evaluation:
- Verified Income
- Stated Income

## Aged Trials as Share of Active Trials



116,000 active trials were initiated at least [...] months ago. The servicers with the larg[...] of the oldest trials are Bank of America [...] Morgan Chase, who account for 50% of [...]

MAKING HO[ME]

FAIRBAIRN

8052387497

12/15/2010  13:45

# Making Home Affordable Program

### Servicer Performance Report Through July 2010

**Disposition Path**
**Homeowners in Canceled HAMP Trial Modifications**
**Through June 2010 (8 Largest Servicers)**

Homeowners Whose HAMP Trial Modification Was Canceled Who Are in the Process of:

| Services | Action Pending | Action Not Allowed/ Bankruptcy In Process | Borrower Current | Alternative Modification | Payment Plan | Loan Payoff | Short Sale/ Deed in Lieu | Foreclosure Starts | Foreclosure Completions | Total (As of June 2010) |
|---|---|---|---|---|---|---|---|---|---|---|
| American Home Mortgage Servicing Inc. | 137 | 15 | 59 | 373 | 10 | 164 | 17 | 68 | 3 | 846 |
| Bank of America, NA⁴ | 75,276 | 2,383 | 3,661 | 26,387 | 812 | 555 | 1,400 | 3,564 | 824 | 114,989 |
| CitiMortgage Inc. | 18,992 | 7,019 | 8,414 | 33,948 | 1,197 | 260 | 1,146 | 5,953 | 573 | 77,502 |
| GMAC Mortgage Inc. | 2,119 | 267 | 1,026 | 6,455 | 432 | 394 | 341 | 1,196 | 892 | 12,342 |
| JP Morgan Chase Bank NA⁵ | 12,508 | 300 | 1,033 | 44,086 | 71 | 1,541 | 1,813 | 11,977 | 2,062 | 74,486 |
| Litton Loan Servicing LP | 5,099 | 386 | 1,439 | 12,895 | 313 | 85 | 697 | 2,313 | 342 | 21,667 |
| OneWest Bank | 2,017 | 243 | 223 | 4,626 | 50 | 9 | 440 | 1,032 | 622 | 9,262 |
| Wells Fargo Bank NA⁶ | 9,251 | 512 | 8,212 | 57,469 | 269 | 2,069 | 4,019 | 14,328 | 2,658 | 98,987 |
| **TOTAL (These 8 Servicers)** | **123,394 30.1%** | **11,145 2.7%** | **24,274 5.9%** | **186,157 45.4%** | **3,254 0.8%** | **4,677 1.1%** | **9,373 2.3%** | **40,231 9.8%** | **7,476 1.8%** | **409,981 100%** |

The most common [c...]
trial cancellations ar[...]

- Insufficient docum[...]
- Trial plan payment[...]
- Ineligible borrowe[...] to-income ratio is a[...] below 31%

Note: Data is as reported by servicers for actions completed through June 30, 2010.
¹ As defined by each amount.
² That loans that have been canceled, but no further action have yet been taken.
³ An arrangement with the borrower and servicer that does not involve a formal loan modification.
⁴ Bank of America, NA includes Bank of America, NA, BAC Home Loans Servicing LP, Home Loan Services and Wilshire Credit Corporation.
⁵ J.P. Morgan Chase Bank, NA includes GMAC Mortgage Corporation.
⁶ Wells Fargo Bank, NA includes a portion of the loans previously included in Wachovia Mortgage, FSB. Excludes Wachovia Mortgage FSB Pick-a-Payment Loans; includes cancellations pending data correction.

MAKING [HO]

EXHIBIT A to Notice of Removal
Page No. 22

# Making Home Affordable Program
## Servicer Performance Report Through July 2010

**Disposition Path**
**Homeowners Not Accepted for HAMP Trial Modifications**
**Through June 2010 (8 Largest Servicers)**

Homeowners Not Accepted for a HAMP Trial Modification Who Are in the Process of:

| Servicer | Action Pending | Action Not Allowed — Bankruptcy in Process | Borrower Current | Alternative Modification | Payment Plan[2] | Loan Payoff | Short Sale/ Deed in Lieu | Foreclosure Starts | Foreclosure Completions | Total (As of June 2010) |
|---|---|---|---|---|---|---|---|---|---|---|
| American Home Mortgage Servicing Inc. | 1,198 | 253 | 1,992 | 13,962 | 381 | 225 | 1,038 | 2,236 | 18 | 21,303 |
| Bank of America, NA[4] | 26,130 | 2,907 | 2,358 | 8,759 | 784 | 307 | 9,388 | 16,686 | 2,510 | 69,029 |
| CitiMortgage Inc. | 17,111 | 6,920 | 3,975 | 35,202 | 5,583 | 10,597 | 1,849 | 10,640 | 4,265 | 96,142 |
| GMAC Mortgage Inc. | 19,832 | 3,256 | 19,348 | 25,945 | 2,891 | 3,374 | 3,594 | 12,573 | 3,548 | 94,322 |
| JP Morgan Chase Bank NA[5] | 25,282 | 1,441 | 68,448 | 51,007 | 241 | 6,155 | 2,247 | 8,918 | 1,374 | 166,223 |
| Litton Loan Servicing LP | 7,573 | 3,144 | 6,618 | 9,608 | 1,093 | 280 | 2,943 | 7,065 | 1,908 | 40,252 |
| OneWest Bank | 8,363 | 1,433 | 5,440 | 4,465 | 480 | 127 | 2,534 | 4,012 | 4,115 | 30,969 |
| Wells Fargo Bank NA[6] | 13,253 | 3,054 | 20,497 | 40,239 | 1,706 | 2,665 | 3,470 | 12,673 | 4,931 | 100,488 |
| **TOTAL (These 8 Servicers)** | **118,842** | **19,898** | **128,676** | **191,187** | **13,159** | **23,730** | **26,123** | **24,833** | **22,470** | **618,028** |
| | **19.2%** | **3.2%** | **20.8%** | **30.9%** | **2.1%** | **3.8%** | **4.2%** | **12.1%** | **3.6%** | **100%** |

The most common
trials not accepted a

• Ineligible borrower
to-income ratio is a
below 31%

• Insufficient docum

• Imminent default r
evidenced by borro

Note: Data is as reported by servicers for actions completed through June 30, 2010.
[1] As defined by cap period.
[2] Homeowners who were not approved for a HAMP trial modification, but no further action has yet been taken.
[3] An arrangement with the borrower and servicer that does not involve a formal loan modification.
[4] Bank of America, NA includes Bank of America, NA, BAC Home Loans Servicing LP, Home Loan Services and Wilshire Credit Corporation.
[5] JP Morgan Chase Bank, NA includes EMC Mortgage Corporation.
[6] Wells Fargo Bank, NA includes a portion of the loans previously included in Wachovia Mortgage, FSB. Excludes Wachovia Mortgage FSB Pick-a-Payment Loans.


MAKING HO

PAGE  23/44          FAIRBAIRN          8052387497          13:45  12/15/2010

# Making Home Affordable Program
### Servicer Performance Report Through July 2010

| Selected Homeowner Outreach Measures | |
|---|---|
| Homeowner Outreach Events Hosted Nationally by Treasury and Partners (cumulative) | 42 |
| Homeowners Attending Treasury-Sponsored Events (cumulative) | 43,973 |
| Servicer Solicitation of Borrowers (cumulative)[1] | 5,511,941 |
| Page views on MakingHomeAffordable.gov (July 2010) | 2,836,592 |
| Page views on MakingHomeAffordable.gov (cumulative) | 92,504,552 |
| Percentage to Goal of 3-4 Million Modification Offers by 2012[2] | 39-52% |

[1] Source: survey data provided by SPA servicers. Servicers are encouraged by HAMP to solicit information from borrowers 60+ days delinquent, regardless of eligibility for a HAMP modification.
[2] In 2009, Treasury set a goal of offering help to 3-4 million borrowers through the end of 2012.

| Call Center Volume | | Cumulative |
|---|---|---|
| Total Number of Calls Taken at 1-888-995-HOPE (since program inception) | | 1,377,085 |
| Borrowers Receiving Free Housing Assistance Through the Homeowner's HOPE™ Hotline | | 678,598 |

Source: Homeowner's HOPE™ Hotline.

## Location of Events Hosted by Treasury and Partners



### Event Locations (Listed in Chronological Order)

| | |
|---|---|
| Miami, FL | Ft. Lauderdale/Coral Springs, Fl |
| Sacramento, CA | Houston, TX |
| North Las Vegas, NV | Sacramento, CA |
| Phoenix, AZ | Tucson, AZ |
| Chicago, IL | Glendale, AZ |
| Prince William County, VA | Portland, OR |
| Prince George's County, MD | Seattle, WA |
| Boston, MA | Reno, NV |
| Tampa, FL | Las Vegas, NV |
| Stockton, CA | Richmond, VA |
| Philadelphia, PA | Long Island, NY |
| Cincinnati, OH | Anaheim, CA |
| San Diego, CA | San Bernardino , CA |
| Riverside, CA | Columbus, OH |
| Atlanta, GA | Kansas City, MO |
| St Louis, MO | San Francisco, CA |
| Dallas/Ft Worth, TX | Oakland, CA |
| Jacksonville, FL | Pittsburgh, PA |
| Orlando/Kissimmee, FL | Washington, DC |
| Los Angeles, CA | Minneapolis, MN |
| Ft Myers, FL | Atlanta, GA |

Note: From program launch through July 2010. Some markets have been visited more than once.

MAKING H1

EXHIBIT A to Notice of Removal
Page No. 24

PAGE  24/44

FAIRBAIRN

8052387497

13:45

12/15/2010

# Making Home Affordable Program
### Servicer Performance Report Through July 2010

**Homeowner Experience (5 Largest Servicers)**

## Average Speed to Answer Homeowner Calls (June)



> Homeowner's HOPE™ Hotline Average for June: 2.7 Seconds

Source: Survey data through June 28, 2010, from servicers on call volume to loss mitigation lines.

## Servicer Complaint Rate to Homeowners' HOPE™ Hotline (Program to Date, Through July)

Program to date, there have been 650,202 calls to the Homeowner's HO Hotline regarding a specific SPA servicer, of which 4.5% included comp Below shows specific complaint rates.



> Program to Date Avera

## Call Abandon Rate (June)



> Homeowner's HOPE™ Hotline Average for June: 1.5%

Source: Survey data through June 28, 2010, from servicers on call volume to loss mitigation lines.

*As defined by cap account.

## Servicer Time to Resolve Third-Party Escalations (Program to Date, Through July)



> Target: 25 Calendar Days

| | JP Morgan Chase NA | Bank of America NA | OneWest | Am. Home Servicing | CitiMortgage | Litton | Wells Fargo | |
|---|---|---|---|---|---|---|---|---|
| Resolved: | 937 | 1,350 | 252 | 163 | 416 | 277 | 851 | |

Cases (6700)
Source: HAMP Solutions Center. Target of 25 calendar days includes an estimated 5 days processing by HAMP Solutions Center.

FAIRBAIRN

8052387497

12/15/2010 13:45

# Making Home Affordable Program
### Servicer Performance Report Through July 2010

## HAMP Activity by State

| State | Active Trials | Permanent Modifications | Total | % of Total | State | Active Trials | Permanent Modifications | Total | % of Total |
|---|---|---|---|---|---|---|---|---|---|
| AK | 135 | 178 | 299 | 0.0% | MT | 328 | 456 | 784 | 0.1% |
| AL | 1,545 | 2,545 | 4,190 | 0.6% | NC | 4,709 | 8,109 | 12,818 | 1.9% |
| AR | 538 | 1,053 | 1,641 | 0.2% | ND | 49 | 78 | 127 | 0.0% |
| AZ | 11,784 | 22,213 | 33,997 | 5.0% | NE | 327 | 591 | 918 | 0.1% |
| CA | 60,066 | 94,356 | 154,422 | 22.6% | NH | 1,114 | 2,019 | 3,133 | 0.5% |
| CO | 3,129 | 6,124 | 9,453 | 1.4% | NJ | 8,421 | 13,793 | 22,214 | 3.3% |
| CT | 3,156 | 6,505 | 8,691 | 1.3% | NM | 879 | 1,340 | 2,219 | 0.3% |
| DC | 463 | 699 | 1,162 | 0.2% | NV | 7,043 | 11,288 | 18,331 | 2.7% |
| DE | 748 | 1,383 | 2,132 | 0.3% | NY | 12,774 | 17,613 | 30,387 | 4.5% |
| FL | 31,206 | 50,687 | 81,893 | 12.1% | OH | 5,561 | 8,559 | 13,120 | 2.2% |
| GA | 9,285 | 15,521 | 24,806 | 3.7% | OK | 680 | 1,005 | 1,685 | 0.2% |
| HI | 984 | 1,562 | 2,546 | 0.4% | OR | 2,747 | 4,700 | 7,447 | 1.1% |
| IA | 682 | 1,090 | 1,772 | 0.3% | PA | 5,410 | 8,855 | 14,265 | 2.1% |
| ID | 972 | 1,612 | 2,584 | 0.4% | RI | 1,175 | 2,229 | 3,404 | 0.5% |
| IL | 13,223 | 22,627 | 35,850 | 5.3% | SC | 2,338 | 4,190 | 6,528 | 1.0% |
| IN | 2,434 | 4,279 | 6,713 | 1.0% | SD | 122 | 153 | 275 | 0.0% |
| KS | 643 | 1,039 | 1,682 | 0.2% | TN | 2,552 | 4,529 | 7,081 | 1.0% |
| KY | 1,001 | 1,839 | 2,640 | 0.4% | TX | 8,213 | 10,563 | 18,776 | 2.8% |
| LA | 1,417 | 2,120 | 3,537 | 0.5% | UT | 2,299 | 3,922 | 6,221 | 0.9% |
| MA | 5,849 | 10,637 | 16,486 | 2.4% | VA | 6,122 | 10,660 | 16,782 | 2.5% |
| MD | 8,066 | 14,184 | 22,250 | 3.3% | VT | 182 | 359 | 541 | 0.1% |
| ME | 676 | 1,186 | 1,862 | 0.3% | WA | 4,819 | 8,396 | 13,215 | 1.9% |
| MI | 8,117 | 14,525 | 22,642 | 3.3% | WI | 2,406 | 4,284 | 6,690 | 1.0% |
| MN | 3,947 | 8,360 | 12,307 | 1.8% | WV | 344 | 682 | 1,026 | 0.2% |
| MO | 2,790 | 4,728 | 7,518 | 1.1% | WY | 141 | 209 | 350 | 0.1% |
| MS | 961 | 1,522 | 2,483 | 0.4% | Other* | 1,031 | 848 | 1,879 | 0.3% |

* Includes Guam, Puerto Rico and the U.S. Virgin Islands.



## Modification Activity by State

Note: Includes active trial and permanent modifications from the official HAMP system of record.

HAMP Modifications
- 5,000 and lower
- 5,001 – 10,000
- 10,001 – 20,000
- 20,001 –
- 35,001 –

## Mortgage Delinquency Rates by State

Source: Mortgage Bankers Association. Data is as of 2nd Quarter 2010 and is latest available.

90+ Day Delinquency Rate
- 5.00% and lower
- 5.01% – 10.0%
- 10.01% – 15.0%
- 15.01% – 24.8%
- 24.0

MAKING HK

PAGE  26/44          FAIRBAIRN          8052387497          12/15/2010  13:45

# Making Home Affordable Program

### Servicer Performance Report Through July 2010

## 15 Metropolitan Areas With Highest HAMP Activity

| Metropolitan Statistical Area | Active Trials | Permanent Modifications | Total HAMP Activity | % of All HAMP Activity |
|---|---|---|---|---|
| Los Angeles-Long Beach-Santa Ana, CA | 17,904 | 26,713 | 44,617 | 6.6% |
| New York-Northern New Jersey-Long Island, NY-NJ-PA | 16,678 | 24,615 | 41,293 | 6.1% |
| Riverside-San Bernardino-Ontario, CA | 12,691 | 22,478 | 35,169 | 5.2% |
| Chicago-Naperville-Joliet, IL-IN-WI | 12,734 | 21,842 | 34,576 | 5.1% |
| Miami-Fort Lauderdale-Pompano Beach, FL | 12,786 | 18,923 | 31,709 | 4.7% |
| Phoenix-Mesa-Scottsdale, AZ | 9,735 | 18,409 | 28,144 | 4.2% |
| Washington-Arlington-Alexandria, DC-VA-MD-WV | 8,542 | 15,035 | 23,577 | 3.5% |
| Atlanta-Sandy Springs-Marietta, GA | 7,510 | 12,621 | 20,131 | 3.0% |
| Las Vegas-Paradise, NV | 5,866 | 9,242 | 15,108 | 2.2% |
| Detroit-Warren-Livonia, MI | 5,059 | 8,797 | 13,856 | 2.0% |
| Orlando-Kissimmee, FL | 4,898 | 8,448 | 13,346 | 2.0% |
| Boston-Cambridge-Quincy, MA-NH | 4,148 | 7,570 | 11,718 | 1.7% |
| Sacramento-Arden-Arcade-Roseville, CA | 4,045 | 7,194 | 11,239 | 1.7% |
| San Francisco-Oakland-Fremont, CA | 4,912 | 6,327 | 11,239 | 1.7% |
| Philadelphia-Camden-Wilmington, PA-NJ-DE-MD | 4,143 | 7,023 | 11,166 | 1.6% |

A complete list of HAMP activity for all MSAs is available at
http://www.financialstability.gov/docs/MSA%20Data%20July%202010.pdf

## Modifications by Investor Type (Large Servicers)

| Servicer | GSE | Private | Portfolio |
|---|---|---|---|
| Bank of America, NA [1] | 104,960 | 48,399 | 7,712 |
| JP Morgan Chase NA [2] | 44,544 | 37,091 | 14,440 |
| Wells Fargo Bank, NA [3] | 48,786 | 14,323 | 5,961 |
| CitiMortgage, Inc. | 44,197 | 4,143 | 16,394 |
| OneWest Bank | 16,029 | 14,047 | 2,399 |
| GMAC Mortgage, Inc. | 19,825 | 6,216 | 6,372 |
| Ocwen Financial Corporation, Inc. | 5,850 | 17,114 | 430 |
| American Home Mortgage Servicing Inc. | 1,137 | 19,616 | - |
| Select Portfolio Servicing | 426 | 16,867 | 2,031 |
| Aurora Loan Services, LLC | 10,897 | 7,139 | 221 |
| Wachovia Mortgage, FSB [4] | 159 | 93 | 13,937 |
| Saxon Mortgage Services Inc. | 1,160 | 12,230 | 631 |
| Nationstar Mortgage LLC | 8,914 | 4,136 | 5 |
| Litton Loan Servicing LP | 1,069 | 10,161 | - |
| US Bank NA | 6,158 | 14 | 2,902 |
| HomEq Servicing | 2 | 5,569 | 251 |
| PNC Mortgage [5] | 4,295 | 188 | 441 |
| Green Tree Servicing LLC | 4,184 | 280 | 22 |
| Carrington Mortgage Services LLC | - | 2,860 | - |
| Remainder of HAMP Servicers | 52,817 | 3,496 | 5,286 |
| Total | 375,489 | 222,892 | 79,437 |

[1] Bank of America, NA includes Bank of America, NA, BAC Home Loans Servicing LP, Home Loans Services, Wilshire Credit Corporation.
[2] J.P. Morgan Chase Bank, NA includes EMC Mortgage Corporation.
[3] Wells Fargo Bank, NA includes a portion of the loans previously included in Wachovia Mortgage, FSB.
[4] Wachovia Mortgage, FSB consists of Wachovia Mortgage FSB Pick-a-Payment loans.
[5] Formerly National City Bank.

Note: Figures reflect active trials and permanent modifications.



# Making Home Affordable Program
### Servicer Performance Report Through July 2010

## Appendix A: Non-GSE Participants in HAMP

| | | |
|---|---|---|
| Allstate Mortgage Loans & Investments, Inc. | Green Tree Servicing LLC | Purdue Employees Federal Credit Union |
| American Eagle Federal Credit Union | Hartford Savings Bank | QLending, Inc. |
| American Home Mortgage Servicing, Inc | Hillsdale County National Bank | Quantum Servicing Corporation |
| AMS Servicing, LLC | HomEq Servicing | Residential Credit Solutions |
| Aurora Loan Services, LLC | HomeStar Bank & Financial Services | RG Mortgage Corporation |
| Bank of America, N.A.[1] | Horicon Bank | Roebling Bank |
| Bank United | Horizon Bank, NA | RoundPoint Mortgage Servicing Corpora |
| Bay Federal Credit Union | Iberiabank | Saxon Mortgage Services, Inc. |
| Bay Gulf Credit Union | IBM Southeast Employees' Federal Credit Union | Schools Financial Credit Union |
| Bayview Loan Servicing, LLC | IC Federal Credit Union | SEFCU |
| Carrington Mortgage Services, LLC | Idaho Housing and Finance Association | Select Portfolio Servicing |
| CCO Mortgage | iServe Residential Lending LLC | Servis One Inc., dba BSI Financial Service |
| Central Florida Educators Federal Credit Union | iServe Servicing Inc. | ShoreBank |
| Central Jersey Federal Credit Union | J.P.Morgan Chase Bank, NA[2] | Silver State Schools Credit Union |
| Chase Home Finance, LLC | Lake City Bank | Sound Community Bank |
| CitiMortgage, Inc. | Lake National Bank | Specialized Loan Servicing, LLC |
| Citizens 1st National Bank | Litton Loan Servicing | Spirit of Alaska Federal Credit Union |
| Citizens First Wholesale Mortgage Company | Los Alamos National Bank | Stanford Federal Credit Union |
| Community Bank & Trust Company | Marix Servicing, LLC | Sterling Savings Bank |
| CUC Mortgage Corporation | Metropolitan National Bank | Technology Credit Union |
| DuPage Credit Union | Midwest Bank & Trust Co. | Tempe Schools Credit Union |
| Eaton National Bank & Trust Co | Mission Federal Credit Union | The Golden 1 Credit Union |
| Farmers State Bank | MorEquity, Inc. | U.S. Bank National Association |
| Fidelity Homestead Savings Bank | Mortgage Center, LLC | United Bank of Georgia |
| First Bank | Mortgage Clearing Corporation | United Bank Mortgage Corporation |
| First Keystone Bank | National City Bank | Urban Trust Bank |
| First National Bank of Grant Park | Nationstar Mortgage LLC | Vantium Capital, Inc. |
| Franklin Credit Management Corporation | Navy Federal Credit Union | Verity Credit Union |
| Fresno County Federal Credit Union | Oakland Municipal Credit Union | Vist Financial Corp. |
| Glass City Federal Credit Union | Ocwen Financial Corporation, Inc. | Wells Fargo Bank, NA[3] |
| GMAC Mortgage, Inc. | OneWest Bank | Wealthbridge Mortgage Corp. |
| Golden Plains Credit Union | ORNL Federal Credit Union | Wescom Central Credit Union |
| Grafton Suburban Credit Union | Park View Federal Savings Bank | Yadkin Valley Bank |
| Great Lakes Credit Union | PennyMac Loan Services, LLC | |
| Greater Nevada Mortgage Services | PNC Bank, National Association | |

[1] Bank of America, NA includes Bank of America, NA, BAC Home Loans Servicing LP, Home Loan Services and Wilshire Credit Corporation.
[2] J.P. Morgan Chase Bank, NA includes EMC Mortgage Corporation.
[3] Wells Fargo Bank, NA includes Wachovia Mortgage FSB and Wachovia Bank NA.

# Making Home Affordable Program
### Servicer Performance Report Through July 2010

## Appendix B: Description of Compliance Activities

*Note: Servicer-specific compliance data will be reported quarterly.*

**Description of Compliance Activities**

Freddie Mac, serving as Compliance Agent for Treasury's Home Affordable Modification Program (HAMP), has created a separate division known as Making Home Affordable - Compliance (MHA-C). Using a risk-based approach, MHA-C conducts a number of different types of compliance activities to assess servicer compliance with HAMP guidelines, as described below.

**On Site Reviews: Readiness & Governance** – A review performed by MHA-C to assess the servicer's preparedness for complying with new/future HAMP requirements, or to research a trend or potential implementation risk. Reviews are performed as needed, determined by frequency of new program additions.

**NPV** – A review conducted by MHA-C to determine the servicer's adherence to the HAMP NPV guidelines. For those servicers that have elected to recode the NPV model into their own systems (recoders), the testing process is designed to ensure the servicer's NPV model is accurately calculating NPV and that the model usage is consistent with directives. At a minimum, recoders are subject to quarterly off-site testing and semi-annual for on-site reviews. For servicers using the Treasury NPV Web Portal, reviews of data submissions are performed on a monthly basis.

**On Site Reviews: Implementation** – A review conducted by MHA-C covering the servicer's overall execution of the HAMP program. Areas covered include, among other things, solicitation, eligibility, underwriting, document management, payment processing, reporting, and governance. Reviews are performed at a minimum for larger servicers on a semi-annual schedule and for smaller servicers on an annual schedule.

**Loan File Review** – A review performed by MHA-C of a servicer's non-performing loan portfolio primarily to assess completeness of relevant documentation and appropriate loan modification decisioning. This includes reviews of loans which have successfully converted to a permanent modification to ensure they meet the HAMP guidelines, as well as loans that have not been offered HAMP modifications to ensure that the exclusion was appropriate ("Second Look"). Larger servicers are on an alternating permanent modifications and Second Look monthly loan file review cycle. These Loan File reviews consist of a statistical sample (typically 100-150 loan files per larger servicer). Smaller servicers are also statistically sampled on a quarterly or semi-annual cycle.

**Incentive Payments** – A review performed by MHA-C to determine the accuracy and validity of borrower and investor incentive payments, and to assess whether borrower payments are appropriately allocated to borrowers' loan principal in accordance with HAMP guidelines. They are performed at a minimum annually on the top 21 servicers.

**Areas of Compliance Focus**

Based on the results of MHA-C's reviews to date and anticipated risks to the program, HAMP compliance efforts will remain focused on the following general areas:

**Borrower Solicitation** – Servicers are required to solicit eligible borrowers without delay and not conduct foreclosure proceedings until such borrowers are appropriately considered for HAMP. It is critical that servicers not take actions that would lead to borrowers becoming displaced from their home without being given proper consideration for a loan modification or other foreclosure alternative. Servicers should ensure that their operating protocols identify all populations of eligible borrowers. Servicers should ensure that their operating procedures meet or exceed the minimum requirements of Supplemental Directive 10-02 related to borrower solicitation and contact.

**Underwriting Documentation** – Servicers must retain a complete and consistent set of documentation for all loans considered for HAMP, including evidence supporting borrower income. In addition, appropriate documentation must support all decisions (e.g., denials, permanent modifications, etc.) made by the servicer. Servicer assurance departments are required, and expected [to take] an active role in the ongoing evaluation of the [servicer's] underwriting process and related documentation [...]

**NPV model usage** – Servicers are required to [utilize] present value (NPV) models that produce valid and accurate results. In order to eliminate adverse bo[rrower] outcomes from negative NPV results, servicers m[ust keep] required inputs constant between NPV tests. Ser[vicers] should regularly test their recoded NPV models ag[ainst the] Treasury NPV Portal to identify any anomalous or inaccurate results.

**Document processing and control** – Servicers mus[t adopt] policies and procedures that clearly describe docu[ment] acquisition, tracking, and retention practices. An[y] potential for misplaced or lost documents should [be] immediately be addressed so that timely decision[s can be] made for borrowers eligible for assistance under [HAMP. In] addition, servicers should ensure that proper trai[ning and] education is provided for all parties involved in th[e] document management life cycle, including those [with] responsibility for the servicers' document manage[ment] technology.

**IR2 Data Maintenance** – Servicers are required to [provide] timely and accurate information to the Program Administrator's IR2 data base. This information s[erves] only to measure HAMP's progress, but also as the authoritative source for incentive payments due t[o] borrowers, servicers, and investors. Servicers sho[uld be] conducting ongoing reviews of their reported dat[a and be] prepared to explain circumstances where data is [...] inconsistent or missing.

**Governance** – Servicers should ensure that a soun[d] governance process exists for HAMP. An appropri[ate] governance model begins with senior executive accountability and extends to formal policies and procedures for HAMP-related activities, including development of comprehensive fraud prevention, lending, and quality assurance programs.

 MAKING HO[ME]

12/15/2010  13:45      8052387497                  FAIRBAIRN                          PAGE  02/44

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
WELLS FARGO BANK, NA, A NATIONAL ASSOCIATION and
NDEX WEST, LLC, a DELAWARE LIMITED LIABILITY COMPANY

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
GORDON M. GREENFIELD

 COPY

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**FILED**

DEC 07 2010

SAN LUIS OBISPO SUPERIOR COURT
BY: _Ashley Boneso_, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN LUIS OBISPO<br>Paso Robles<br>901 Park St., Paso Robles, CA 93446 | CASE NUMBER:<br>*(Número del Caso):*<br>**108399** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Adam Ranald Fairbairn    (Bar # 168204)
Attorney at Law, 819 - 12th St. Ste. 211, Paso Robles, CA 93446

Fax No.: (805) 238-7497
Phone No.: (805) 238-7688

DATE:  DEC 07 2010      SUSAN MATHERLY Clerk, by    /S/ ASHELY BONESO , Deputy
*(Fecha)*                      *(Secretario)*                                        *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
LexisNexis® Automated California Judicial Council Forms

EXHIBIT B to Notice of Removal
Page No. 30

12/15/2010  13:45   8052387497                 FAIRBAIRN                          PAGE  03/44

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Adam Ranald Fairbairn   (Bar # 168204)
Attorney at Law
819 – 12th St. Ste. 211
Paso Robles, CA 93446
TELEPHONE NO.: (805) 238-7688        FAX NO.: (805) 238-7497
ATTORNEY FOR (Name): Gordon M. Greenfield, Plaintiff

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN LUIS OBISPO
STREET ADDRESS: 901 Park St.
MAILING ADDRESS: 901 Park St.
CITY AND ZIP CODE: Paso Robles 93446
BRANCH NAME: Paso Robles

**FILED**

DEC 07 2010

SAN LUIS OBISPO SUPERIOR COURT
BY: _____
Ashely Banaso, Deputy Clerk

CASE NAME:
**GREENFIELD vs. WELLS FARGO BANK, et. al.**

| CIVIL CASE COVER SHEET | | | CASE NUMBER: |
|---|---|---|---|

| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | **Complex Case Designation** [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | **108899** JUDGE: Martin Tangeman  DEPT: P-2 |

Items 1–6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [X] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a.[X] monetary   b.[X] nonmonetary; declaratory or injunctive relief   c.[ ] punitive
4. Number of causes of action (specify): SIX (6)
5. This case [ ] is  [X] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: December 7, 2010

Adam Ranald Fairbairn
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

LexisNexis® Automated California Judicial Council Forms

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice—Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

EXHIBIT B to Notice of Removal
Page No. 32

12/15/2010  13:45   8052387497                FAIRBAIRN                            PAGE  01/44

# FACSIMILE TRANSMITTAL



819 12TH STREET                    **ADAM R. FAIRBAIRN**              TEL: 805.238.7688
PASO ROBLES, CA 93446                **ATTORNEY AT LAW**               FAX: 805.238.7497

TO:        NDEX WEST LLC c/o CTSC at: Fax Number 1(213) 614-8632

           WELLS FARGO BANK c/o CSC at: Fax Number 1(302) 636-5454

DATE:      December 15, 2010

FAX NO:    see above

RE:        SERVICE

MESSAGE: Merry X-Mas To Everyone!

This facsimile transmission contains information that is confidential and privileged and is intended for the
use of the individual named above. Please be aware that if you are not the intended recipient, any
unauthorized use or distribution of this information is strictly prohibited.
If you received this facsimile in error, please notify the sender immediately, by telephone at 805-238-7688.

EXHIBIT B to Notice of Removal
Page No. 33



**CORPORATION SERVICE COMPANY®**

# Notice of Service of Process

DDZ / ALL
Transmittal Number: 8286483
Date Processed: 12/16/2010

| | |
|---|---|
| Primary Contact: | Wells Processing West<br>Corporation Service Company- Wilmington, DELAWARE<br>2711 Centerville Road<br>Suite 400<br>Wilmington, DE 19808 |

| | |
|---|---|
| Entity: | Wells Fargo Bank, National Association<br>Entity ID Number  2013649 |
| Entity Served: | Wells Fargo Bank |
| Title of Action: | Gordon M. Greenfield vs. Wells Fargo bank, NA |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Contract |
| Court/Agency: | San Luis Obispo County Superior Court, California |
| Case/Reference No: | CV108399 |
| Jurisdiction Served: | Delaware |
| Date Served on CSC: | 12/15/2010 |
| Answer or Appearance Due: | 12/16/2010 |
| Originally Served On: | CSC |
| How Served: | FAX |
| Sender Information: | Adam R. Fairbairn<br>805-238-7688 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN LUIS OBISPO

| | | CASE NUMBER |
|---|---|---|
| GORDON GREENFIELD | Plaintiff(s), | CV108399 |
| VS. | | |
| WELLS FARGO BANK | Defendant(s). | **Case Management Conference** |

Fairbairn, Adam R
819 - 12th Street
Paso Robles          CA   93446

### NOTICE OF ASSIGNMENT & CASE MANAGEMENT CONFERENCE.

This case is assigned to **Hon. Martin Tangeman, Paso Robles Br** for all purposes.
Plaintiff must serve the Summons and Complaint, a copy of this Notice, a Case Management Policy Statement, a blank
Case Management Statement, Alternative Dispute Resolution Policy & Stipulation to ADR & must file proofs of service
within 60 days after the complaint is filed. **Defendants shall file responsive pleadings within 30 days of service**
unless the parties stipulate to an extension of not more than 15 days.
IT IS HEREBY ORDERED:
1.  The parties must appear for a first Case Management Conference on:
    **April 11, 2011  at  9:00 am  in Paso Robles Branch - Dept. 2**
    *THE PARTIES OR THEIR ATTORNEYS MUST APPEAR AT THE CASE MANAGEMENT CONFERENCE ***
    For information about telephone appearances call **COURTCALL** at **(888) 882-6878**

2.  Each party must file & serve a Case Management Statement at least 15 days before the conference.
3.  The person appearing at the first Case Management Conference must be familiar with the case and prepared to discuss
    suitability of the case for mediation, binding arbitration, judicial arbitration or some form of alternative dispute resolution.
4.  Trial will be set within the 11th or 12th month after the filing of the complaint.  Counsel must arrange their schedules,
    reserve dates with witnesses and schedule trial preparation with this in mind.  Continuances will be granted only on a clear
    showing of good cause.
5.  All law and motion matters will be calendared in the department of the assigned judge and filed with the Clerk's Office.
6.  Each party should be prepared to show cause why sanctions should not be imposed for a failure to comply with these rules.
***LIMITED JURISDICTION ONLY:** unless the parties have entered into arbitration as required by Local Rules 9.00
and 26.00.  "Entered into arbitration" means the date upon which the administrator mails the arbitration list.
encs.3

1  ADAM R. FAIRBAIRN (SBN 168204)
   Attorney at Law
2  819 - 12th Street, Suite 211
   Paso Robles, CA 93446
3  Tel.: 805-238-7688
   Fax.: 805-238-7497

4  Attorney for Plaintiff, Gordon M. Greenfield

RECEIVED
SAN LUIS OBISPO
SUPERIOR COURT

DEC 15 2010

BY _____ AL
DEPUTY CLERK

5

6

7  COPY

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            IN AND FOR THE COUNTY OF  SAN LUIS OBISPO

10 GORDON M. GREENFIELD,            )   CASE NO. CV 108399
11         Plaintiff,               )   EX PARTE APPLICATION FOR ORDER TO
                                     )   SHOW CAUSE FOR  TEMPORARY
12 vs.                              )   RESTRAINING ORDER AND PRELIMINARY
                                     )   INJUNCTION
13 WELLS FARGO BANK, NA. A          )
   NATIONAL ASSOCIATION, NDEX       )   TRO DATE: December 16, 2010
14 WEST, LLC, a DELAWARE LIMITED    )   Time: 8:30 A.M.
   LIABILITY COMPANY,  and DOES 1 to )   Dept: P-2
15 10 inclusive,                    )
                                     )   OSC DATE:____/____/2011
16         Defendants.              )   Time: 10:30 A.M.
                                     )   Dept: P-2
17

18 To:  WELLS FARGO BANK, NA. A NATIONAL ASSOCIATION & NDEX WEST, LLC, a

19      DELAWARE LIMITED LIABILITY COMPANY.

20      You are ordered to appear before this Court on the date and time set for the above to

21 show cause why you should not be enjoined from continuing with the sale of the property by

22 conducting private foreclosure sale TS No. 20100015007295 upon the Plaintiff who currently is

23 the legal owner and Trustor of the subject property located at 110 Tierra Vista, Paso Robles, CA

24 93446, hereinafter referred to as the "Property".

25      YOU ARE FURTHER NOTIFIED THAT PENDING THE HEARING ON THIS

26 ORDER TO SHOW CAUSE YOU SHALL TAKE NO FURTHER STEPS IN CONNECTION

27 WITH THE SALE OF THE PROPERTY OF THE PLAINTIFF WHO IS CURRENTLY

28 OWNERS OF THE ABOVE REFERENCED PROPERTY.

ORDER TO SHOW CAUSE - GORDON M. GREENFIELD                    Page 1

1   Additional Court Order (if any): _____
2   _____
3   _____
4   _____
5   _____
6
7        Service of this order to show cause together with all supporting papers by facsimile shall
8   be deemed sufficient service.
9   Signed this day of: December 16, 2010
10
11
12
13
    _____
14  Judge of the Superior Court
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORDER TO SHOW CAUSE - GORDON M. GREENFIELD                              Page 2

1  ADAM R. FAIRBAIRN (SBN 168204)
   Attorney at Law
2  819 - 12th Street, Suite 211
   Paso Robles, CA 93446
3  Tel.: 805-238-7688
   Fax.: 805-238-7497

4  Attorney for Plaintiff, Gordon M. Greenfield

5

6

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     IN AND FOR THE COUNTY OF SAN LUIS OBISPO

10  GORDON M. GREENFIELD,            )   CASE NO. CV 108399
                                     )
11        Plaintiff,                 )   DECLARATION OF ADAM RANALD
                                     )   FAIRBAIRN RE NOTICE OF EX PARTE
12  vs.                              )   APPLICATION FOR A TEMPORARY
                                     )   RESTRAINING ORDER & ORDER TO SHOW
13  WELLS FARGO BANK, NA. A          )   CAUSE
    NATIONAL ASSOCIATION, NDEX       )
14  WEST, LLC, a DELAWARE LIMITED    )   Ex Parte Date:
    LIABILITY COMPANY, and DOES 1 to )
15  10 inclusive,                    )   December 16, 2010
                                     )   8:30 A.M.
16        Defendants.                )   P-2
                                     )
17

18        I, Adam Ranald Fairbairn declare:

19  1.    That I am an attorney licensed to practice before all of the Courts in the State of

20        California and am the attorney for the Plaintiff in the above matter.

21  2.    On December 15, 2010, at 8:32 A.M. I sent a facsimile transmission to the Defendant

22        NDEX WEST, LLC, who has CT Corporate Systems for their agent for service of

23        process. At 8:22 A.M. I called CT Corporate Systems' phone number for the Agent of

24        Process Department in Los Angeles, 1(213)627-8252, which is available form the

25        internet. I was instructed by a live male, named Jerry, to send a Facsimile of the notice to

26        213-614-8632, which I did. Attached is the actual document sent and the Transmission

27        Verification Report of said facsimile from December 15, 2010, at 8:32 A.M. (See Exhibit

28        "A" attached).

                                                                                  Page 1

3.     I additionally called, at 9:45 A.M. on December 15, 2010, CSC at their 1(866)403-5272 number, pressed #3, spoke to a receptionist who connected me to a female named Donna who was in the "Service of Process Department." I gave Donna all of the information that is contained upon the facsimile I sent to CTSC, however they were not interested in who the Judge was, just the department number.

4.     I have properly, as per the requirements of California Codes and Rules given notice of the Ex Parte hearing to all defendants as required by law.

I declare under the penalty of perjury under the laws of the state a California that the foregoing is true and correct executed on December 15, 2010.

Adam Ranald Fairbairn, Esq.                    12/15/2010

Page 2

# FACSIMILE TRANSMITTAL



819 12TH STREET
PASO ROBLES, CA 93446

## ADAM R. FAIRBAIRN
### ATTORNEY AT LAW

TEL: 805.238.7688
FAX: 805.238.7497

**TO:**      NDEX WEST, LLC, c/o C T CORPORATION SYSTEM

**DATE:**    December 15, 2010 @ 9:30 A.M.

**FAX NO:**  1(213) 614-8632

**RE:**      Notice of Ex Parte Hearing

**MESSAGE:** Date of Hearing: December 16, 2010
Time of Hearing: 8:30 A.M.
Address of Hearing: 901 Park St., Paso Robles, CA 93446
Reason for Hearing: Request TRO stopping TS No. 20100015007295
Department of Hearing: P-2
Judge of Hearing: Hon. Martin Tangeman
Case Name Greenfield vs Wells Fargo Bank, et al.
Case Number: CV 108399
Contact Attorney: Adam Ranald Fairbairn (see above)

PAGES: 1 (Including cover sheet)

P.S. Merry X-Mas Too Everyone!

EXHIBIT A

PAGE 1 OF 2

This facsimile transmission contains information that is confidential and privileged and is intended for the use of the individual named above. Please be aware that if you are not the intended recipient, any unauthorized use or distribution of this information is strictly prohibited.
If you received this facsimile in error, please notify the sender immediately, by telephone at 805-238-7688.

12/15/2010  13:45    8052387497              FAIRBAIRN                    PAGE  35/44

## TRANSMISSION VERIFICATION REPORT

```
                                    TIME  : 12/15/2010 09:23
                                    NAME  : FAIRBAIRN
                                    FAX   : 8052387497
                                    TEL   : 8052387688
                                    SER.# : B8N126034
```

```
  DATE,TIME              12/15  09:23
  FAX NO./NAME           12136148632
  DURATION               00:00:14
  PAGE(S)                01
  RESULT                 OK
  MODE                   STANDARD
                         ECM
```

EXHIBIT A
PAGE 2 OF 2

1    ADAM R. FAIRBAIRN (SBN 168204)
     Attorney at Law
2    819 - 12th Street, Suite 211
     Paso Robles, CA 93446
3    Tel.: 805-238-7688
     Fax.: 805-238-7497
4

5    Attorney for Plaintiff, Gordon M. Greenfield

**FILED**

DEC 15 2010

SAN LUIS OBISPO SUPERIOR COURT
~~...~~
A. Leach, Deputy Clerk

6

7            **COPY**

8        SUPERIOR COURT OF THE STATE OF CALIFORNIA

9        IN AND FOR THE COUNTY OF SAN LUIS OBISPO

10   GORDON M. GREENFIELD,       )  CASE NO. CV CV 108399

11       Plaintiff,               )  DECLARATION OF GORDON M.
                           )  GREENFIELD IN SUPPORT OF TEMPORARY
12   vs.                      )  RESTRAINING ORDER AND PRELIMINARY
                           )  INJUNCTION
13   WELLS FARGO BANK, NA. A     )
     NATIONAL ASSOCIATION, NDEX   )  Ex Parte Date: December 16, 2010
14   WEST, LLC, a DELAWARE LIMITED )  Time:  8:30 A.M.
     LIABILITY COMPANY,  and DOES 1 to )  Place: P-2
15   10 inclusive,                  )
                           )
16       Defendants.           )

17

18      I GORDON M. GREENFIELD declare:

19   1.   I am the Plaintiff in the above-entitled matter and I have personal knowledge of the

20       matters contained herein and I can competently testify thereto.

21   2.   I currently reside at the subject property ( hereinafter Property) located at 110 Tierra

22       Vista, Paso Robles, CA 93446.

23   3.   **The Property is set to be sold on DECEMBER 22, 2010 at 11:30 AM. I am**

24       **requesting that a Temporary Restraining Order and a Preliminary Injunction be**

25       **entered against the defendants so as to enjoin the sale of the Property.**

26   4.   There does not exist enough time to normally hear a motion for a preliminary injunction

27       before the sale of the property occurs. I was only able to meet with and retain Mr.

28       Fairbairn on December 2, 2010. Prior to receiving his letter concerning my foreclosure

DECLARATION OF GORDON M. GREEN FIELD IN SUPPORT OF TEMPORARY RESTRAINING ORDER

Page 1

1      sale I had no relationship with Mr. Fairbairn.

2  5.   NDEX WEST, LLC, is conducting the private foreclosure sale TS No. 20100015007295

3      for WELLS FARGO BANK.

4  6.   My property is unique and the only one that I possess and live in. If my house is sold at

5      auction, and I am evicted in violation of the California Civil Code, I will lose this unique

6      property.

7  7.   I will prevail in the fraud cause of action because I possess evidence of the offer and the

8      agreement that Defendant WELLS FARGO BANK has denied exists. I will prevail in the

9      underlying cause of action for Breach of Contract and shall receive damages or the

10      benefit of my agreement made on February 15, 2010.

11  8.   On or about February 15, 2000 I was given news from his employer that I was going to be

12      forced to take two furlough days each month. Between March and May of 2010, with the

13      furlough days in force, and with rising gas prices, I felt that it would be in my best interest

14      to contact the defendant WELLS and ask for a loan modification. Shortly thereafter I

15      contacted the WELLS, and they sent to me a loan modification package so that I could

16      modify my loan.

17  9.   The modification had the following terms and conditions:

18       a.   I was to pay one year of payments at an increased rate of $3106 a month after I

19          made an initial payment in July 2009 of $3400. These sums were more than my

20          initial monthly home payments. I believe I have this written agreement in my

21          possession, however as of today's date I have not located it.

22       b.   After one year of making the increased payments, the term for the deed of trust

23          would be turned into a 40 year term, with a principle reduction and  with 1 1/4

24          points being removed from the interest rate.

25       c.   The monthly payment would be effectively reduced to $2400 a month.

26       d.   At the time of the modification I was current on all of my payments.

27  10.  Shortly before or after the modification was agreed to my employer then enforced a three-

28      day a month furlough and a 10% increase in taxes, citing "budget problems." This made

DECLARATION OF GORDON M. GREENFIELD IN SUPPORT OF TEMPORARY RESTRAINING ORDER

Page 2

1     for further financial hardships for me and my wife.

2  11.  Be that as it may, between July 1, 2009 and February 1, 2010 I made all payments. At the

3     middle of February I contacted the lender once again and requested that they had the

4     remaining four payments of the initial 12, commuted to the end of the note term, and to

5     rapidly implement the $2400 a month payment as both I and my wife were unable to meet

6     the necessities of life while still being employed full-time. I was reduced to rudimentary

7     sustenance and had been doing so for more than four months.

8  12.  WELLS  then informed me through their agent that I spoke to in February of 2010 that

9     because I had made all of the payments at an increased sum that they would be willing to

10    offer the extension to me by adding the remaining four payments to the end of the

11    agreement, however the only way that they would allow I to do so would be if I was "in

12    distress" on the loan. I, who was current on all of the payments, and had already made the

13    February 2010 payment, asked several times if this was the best thing to do. The WELLS

14    "loss mitigation specialist" that I spoke to stated that I was "pre-qualified" for the

15    extension so long as my loan was "in distress." I am a correctional officer and not a

16    professional lender of money for deed of trust transactions. Relying upon the offer made

17    by the WELLS "loss mitigation specialist," I accepted the offer in order to obtain the

18    lower payment immediately.

19  13.  To that end prior to the March payment being due, I received documentation from

20    WELLS to effectuate the agreed-upon of the accord and satisfaction (extension of the

21    four payments and the acceleration of the completion of the modification from May of

22    2009), I do not believe I possess that paperwork as I sent it all back to WELLS without a

23    copy.

24  14.  As per the agreement made on or about February 15, 2010, in order to be "in distress" I

25    did not pay either March or April payments of 2010.

26  15.  In June of 2010 I tendered the first payment of $2600 which was to be the sum paid under

27    the 40 year note that I had agreed to and additionally reached an accord and satisfaction

28    concerning in February of 2010.

DECLARATION OF GORDON M. GREEN FIELD IN SUPPORT OF TEMPORARY RESTRAINING ORDER

Page 3

1  16.   WELLS rejected the $2600 payment. Wells has rejected all payments tendered by I since

2        May of 2010.

3  17.   I did not make the two payments as requested, (March & April) which detrimentally

4        harmed my credit rating and I did not place the home up for sale or auction with a real

5        estate agent to take advantage of the housing prices of the second quarter of 2010.

6  18.   The defendant WELLS denies that there is any agreement with I concerning the

7        acceleration and the extension, to that end they are for closing on the plaintiff's home on

8        December 22, 2010, as sworn to in my complaint filed on December 7, 2010.

9  19.   I accepted the February 2010 offer of accordance satisfaction as made to him by WELLS.

10       I fully performed everything on my part to be performed.

11 20.   WELLS FARGO BANK has breached the agreement and has failed and refused to follow

12       the accord and satisfaction concerning the loan, and has denied in bad faith that there ever

13       was an agreement in February of 2010.

14 21.   I fully performed everything on my part to be performed, including the conditions

15       precedent to the modification, except for those obligations that have been excused by

16       defendant WELLS FARGO BANK's breaches herein.

17 22.   Additionally, since the property is unique, if it is sold to a third party at tomorrow's sale, I

18       would suffer irreparable harm through the complete and irreparable loss of said unique

19       property. A Temporary Restraining Order ought to be granted to enjoin the sale.

20 I declare under penalty of perjury under the laws of the State of California that the foregoing is

21 true and correct and that this Verification is executed at Paso Robles, California on December 14,

22 2010.

23

24

25   [SEE ATTACHED FAX SIGNATURE

26   _____

27   GORDON M. GREENFIELD

28

DECLARATION OF GORDON M. GREEN FIELD IN SUPPORT OF TEMPORARY RESTRAINING ORDER

Page 4

EXHIBIT B to Notice of Removal
Page No. 45

16.  WELLS rejected the $2600 payment. Wells has rejected all payments tendered by I since May of 2010.

17.  I did not make the two payments as requested, (March & April) which detrimentally harmed my credit rating and I did not place the home up for sale or auction with a real estate agent to take advantage of the housing prices of the second quarter of 2010.

18.  The defendant WELLS denies that there is any agreement with I concerning the acceleration and the extension, to that end they are for closing on the plaintiff's home on December 22, 2010, as sworn to in my complaint filed on December 7, 2010.

19.  I accepted the February 2010 offer of accordance satisfaction as made to him by WELLS. I fully performed everything on my part to be performed.

20.  WELLS FARGO BANK has breached the agreement and has failed and refused to follow this accord and satisfaction concerning the loan, and has denied in bad faith that there ever was an agreement in February of 2010.

21.  I fully performed everything on my part to be performed, including the conditions precedent to the modification, except for those obligations that have been excused by defendant WELLS FARGO BANK's breaches herein.

22.  Additionally, since the property is unique, if it is sold to a third party at tomorrow's sale, I would suffer irreparable harm through the complete and irreparable loss of said unique property. A Temporary Restraining Order ought to be granted to enjoin the sale.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Verification is executed at Paso Robles, California on December 14, 2010.


GORDON M. GREENFIELD


DECLARATION OF GORDON M. GREENFIELD IN SUPPORT OF TEMPORARY RESTRAINING ORDER

Page 4

12/15/2010  13:45    8052387497              FAIRBAIRN                      PAGE  41/44

```
TRANSMISSION VERIFICATION REPORT

                              TIME  : 12/14/2010 16:43
                              NAME  : FAIRBAIRN
                              FAX   : 8052387497
                              TEL   : 8052387680
                              SER.# : BBN126034


    DATE,TIME              12/14  15:42
    FAX NO./NAME           2260857
    DURATION               00:01:29
    PAGE(S)                05
    RESULT                 OK
    MODE                   STANDARD
                           ECM
```

1 ADAM R. FAIRBAIRN (SBN 168204)
  Attorney at Law
2 819 - 12ᵗʰ Street, Suite 211
  Paso Robles, CA 93446
3 Tel.: 805-238-7688
  Fax.: 805-238-7497
4

5 Attorney for Plaintiff, Gordon M. Greenfield

**FILED**

DEC 15 2010

SAN LUIS OBISPO SUPERIOR COURT

6

7 **COPY**

8 SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 IN AND FOR THE COUNTY OF SAN LUIS OBISPO

| | |
|---|---|
| 10 GORDON M. GREENFIELD, | CASE NO. CV 108399 |
| 11    Plaintiff, | POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR ORDER TO |
| 12 vs. | SHOW CAUSE AND TEMPORARY RESTRAINING ORDER AND PRELIMINARY |
| 13 WELLS FARGO BANK, NA. A NATIONAL ASSOCIATION, NDEX | INJUNCTION |
| 14 WEST, LLC, a DELAWARE LIMITED LIABILITY COMPANY, and DOES 1 to | Date: December 16, 2010 |
| 15 10 inclusive, | Time: 8:30 A.M. Dept: P-2 |
| 16    Defendants. | |

17

18    Code of Civil Procedure section 526(a)(1) provides that an injunction is properly issued

19 where it appears by the complaint that the plaintiff is entitled to the relief demanded, and the

20 relief consists in restraining the commission or continuance of the act complained of, either for a

21 limited period or perpetually.

22 1.    Here the plaintiff's declaration establishes that the non-judicial foreclosure currently

23    being conducted has not been done in conformance with the requirements of Civil Code

24    section 2924 *et seq.* - in particular, a Breach of Contract by the Defendants and Unfair

25    Business Practices have been used by the Defendants to unlawfully conduct the private

26    foreclosure sale, for property 110 Tierra Vista, Paso Robles, CA 93446. Which is being

27    conducted under TS No. 20100015007295 for WELLS. Additional issues of Waiver and

28    Promissory Estoppel for payments received by defendant WELLS additionally bolster

POINTS & AUTHORITIES-GREENFIELD                    Page 1

1     plaintiff's position.

2    2.     Non-judicial foreclosure is deemed to be a harsh remedy subject to careful scrutiny by the

3         courts. Systems Inv. Corp. v Union Bank (1971) 21CA3d 137, 153.

4    3.     Use of a Breach of Contract by the Defendants and Unfair Business Practices that have

5         been used by the Defendants is clearly substantial and prejudicial to a person who has an

6         interest in the property Crummer v Whitehead (1964) 230CA2nd 264, 267, 268.

7    4.     Code of Civil Procedure section 527 governs the issuance of preliminary injunctions and

8         temporary restraining orders. Sub part ( c) (1) provides that a temporary restraining may

9         be only issued after the other party has been notified the time and place where the

10        application will be made. Here plaintiff complied with the notice requirements for ex

11        parte applications set forth in CRC 3.1200 *et seq.*

12    5.     In addition to the above described law, the preliminary injunction ought to issue as the

13        defendants have no ability deny that Breach of Contract, Waiver, Promissory Estoppel

14        and Unfair Business Practices have been used by the Defendants. Because acceleration on

15        default is elective, it is subject to defenses of waiver and estoppel. For example, the

16        beneficiary may be deemed to have waived the right to accelerate after delaying an

17        unreasonable time before electing to accelerate (Holland v. Paddock (1956) 142 Cal. App.

18        2d 534, 538, 298 P.2d 587 (delay of more than 11 months constituted waiver ) the case at

19        hand 8 months).   A beneficiary who has accepted late payments without accelerating does

20        not relinquish the right to accelerate when subsequent payments are late (Young v.

21        Burchill (1929) 96 Cal. App. 341, 343-345),  However, the beneficiary must first give

22        notice that late payments will no longer be accepted and must give the trustor a

23        reasonable opportunity to comply before accelerating (Bledsoe v. Pacific Ready Cut

24        Homes, Inc. (1928) 92 Cal. App. 641, 645; see Altman v. McCollum (1951) 107 Cal.

25        App. 2d Supp. 847.

26    6.     Since the defendants have no ability to prove an absolutely critical element of their non-

27        judicial foreclosure proceeding mandatory requirements, a preliminary injunction all to be

28        issued as there is an extremely high probability that the request for declaratory relief and

POINTS & AUTHORITIES-GREENFIELD          Page 2

injunctive relief by the plaintiff will win at the trial level. With a strong probability of success with the underlying action the preliminary injunction pending the outcome of the complaint ought to be issued at the date set for the hearing on the order to show cause.

7.   Further, issuance of the temporary restraining order is necessary to maintain the status quo until the hearing on the order to show cause can be heard on its merits.

Good cause exists in granting the TRO and preliminary injunction.

Respectfully submitted, December 15, 2010.

Adam Ranald Fairbairn,
       Attorney for Plaintiff GORDON M. GREENFIELD

POINTS & AUTHORITIES-GREENFIELD                                    Page 3

**Back to Search Bank Find**

## Your Bank at a Glance as of 1/6/2011.

**Wells Fargo Bank, National Association** (FDIC Cert: 3511) **is FDIC Insured.**

**Wells Fargo Bank, National Association** has been FDIC insured since **January 1, 1934.**
It was established on **January 1, 1870.**
Its main office (headquarters) is located at:
     **101 N. Phillips Avenue**
     **Sioux Falls, South Dakota 57104**
     **County of Minnehaha**

**Wells Fargo Bank, National Association** has **6585** Domestic Branches (Offices) located in **41** state(s) and **37** Foreign Offices. (Check to locate Branches (Offices) by state.)

Wells Fargo Bank, National Association's reported (or primary) website: http://www.wellsfargo.com:80/

**Wells Fargo Bank, National Association** is chartered as a National Bank. Therefore the primary federal regulator is the **Office of the Comptroller of the Currency (OCC)**. **For consumer assistance** regarding an issue with this institution, please contact the OCC directly using http://www.helpwithmybank.gov/.

Calculate your FDIC insurance coverage at Wells Fargo Bank, National Association using FDIC EDIE at www.fdic.gov/edie.
Last financial information available about Wells Fargo Bank, National Association.
Historical profile of Wells Fargo Bank, National Association.

For additional information please click on one of the following:
1. For more information on Federal Deposit Insurance, Your Insured Deposits or Insured or Not Insured
2. View the industry's overall picture - Statistics at a Glance
     (This will open a new window.)
3. Current Financial data about your bank - Institution Directory – Two years Financial Report
     (This will open a new window.)
4. Examine your bank's financial data - CALL/TFR Financial Information *9/30/2010 Latest Available*
5. Study branching and deposit market share - Summary of Deposits/Market Share
6. Analyze and compare individual institutions and create custom reports - Institution Directory – Compare
7. Review industry using 8 predefined reports - Statistics on Depository Institutions
8. Identify the latest performance trends in your state - Quarterly Banking Profile State Tables
     (This will open a new window.)
9. Analyze institutions and custom peer groups - Statistics on Depository Institutions
10. View branch office deposit information - Summary of Deposits
11. Community Reinvestment Act (CRA) Performance Ratings - CRA Performance Ratings
12. FDIC's Disclaimer - FDIC's Disclaimer

Questions, Suggestions & Requests

**EXHIBIT C to Notice of Removal**
**Page No. 51**



Comptroller of the Currency
Administrator of National Banks

Washington, DC 20219

## CERTIFICATE

I, John Walsh, Acting Comptroller of the Currency, do hereby certify that the document hereto attached is a true and correct copy, as recorded in this Office, of the currently effective Articles of Association for "Wells Fargo Bank, National Association," Sioux Falls, South Dakota, (Charter No. 1).



IN TESTIMONY WHERE OF, I have

hereunto subscribed my name and caused

my seal of office to be fixed to these

presents at the Treasury Department, in the

City of Washington and District of

Columbia, this October 20, 2010.

*John Walsh*

Acting Comptroller of the Currency

EXHIBIT C to Notice of Removal
Page No. 52

# ARTICLES OF ASSOCIATION
## OF
## WELLS FARGO BANK, NATIONAL ASSOCIATION

## ARTICLE I - NAME

The title of this Association shall be Wells Fargo Bank, National Association.  The Association may also use the abbreviation Wells Fargo Bank, N.A.

## ARTICLE II - OFFICES

1.  <u>Main Office</u>.  The main office of this Association shall be in the City of Sioux Falls, County of Minnehaha, State of South Dakota.  The Board of Directors shall have the power to change the location of the main office to any other place within the limits of the City of Sioux Falls, without the approval of the shareholders but subject to the approval of the Comptroller of the Currency.

2.  <u>Branch Offices</u>.  The Board of Directors shall have the power to establish or change the location of any branch or branches of this Association to any other location, without the approval of the shareholders but subject to the approval of the Comptroller of the Currency.

3.  <u>Conduct of Business</u>.  The general business of the Association shall be conducted at its main office and its branches.

## ARTICLE III - BOARD OF DIRECTORS

1.  <u>Number</u>.  The Board of Directors of this Association shall consist of not less than five nor more than twenty-five persons, the exact number to be fixed and determined from time to time by resolution of a majority of the full Board of Directors or by resolution of the shareholders at any annual or special meeting thereof.

2.  <u>Qualification</u>.  Each director, during the full term of his or her directorship, shall own a minimum of $1,000 par value of stock of this Association or an equivalent interest, as determined by the Comptroller of the Currency, in any company which has control over this Association within the meaning of Section 2 of the Bank Holding Company Act of 1956.

3.  <u>Vacancy</u>.  The Board of Directors, by the vote of a majority of the full Board, may, between annual meetings of shareholders, fill vacancies created by the death, incapacity or resignation of any director and by the vote of a majority of the full Board may also, between annual meetings of shareholders, increase the membership of the Board by not more than four members and by like vote appoint qualified persons to fill the vacancies created thereby; provided, however, that at no time shall there be more than twenty-five directors of this Association; and provided further, however, that not more than two members may be added to

**EXHIBIT C to Notice of Removal**
**Page No. 53**

the Board of Directors in the event that the total number of directors last elected by shareholders was fifteen or less.

    4. <u>Appointment of Officers</u>. The Board of Directors shall appoint one of its members President of this Association, who shall act as Chairman of the Board, unless the Board appoints another director to act as Chairman.  In the event the Board of Directors shall appoint a President and a Chairman, the Board shall designate which person shall act as the chief executive officer of this Association.  The Board of Directors shall have the power to appoint one or more Vice Presidents and to appoint a Cashier and such other officers and employees as may be required to transact the business of this Association.

    5. <u>Powers</u>.  The Board of Directors shall have the power to define the duties of the officers and employees of this Association; to fix the salaries to be paid to them; to dismiss them; to require bonds from them and to fix the penalty thereof; to regulate the manner in which the increase of the capital of this Association shall be made; to manage and administer the business and affairs of this Association; to make all Bylaws that it may be lawful for them to make; and generally to do and perform all acts that it may be legal for a Board of Directors to do and perform.

## ARTICLE IV - MEETINGS OF SHAREHOLDERS

    1. <u>Annual Meeting</u>.  The annual meeting of the shareholders for the election of directors and the transaction of whatever other business may be brought before said meeting shall be held at the main office, or such other place as the Board of Directors may designate, on the day of each year specified therefor in the Bylaws, but if no election is held on that day, it may be held on any subsequent day according to the provisions of law; and all elections shall be held according to such lawful regulations as may be prescribed by the Board of Directors.

    2. <u>Special Meetings</u>. The Board of Directors, the Chairman, the President, or any one or more shareholders owning, in the aggregate, not less than 25 percent of the stock of this Association, may call a special meeting of shareholders at any time.

    3. <u>Notice of Meetings</u>. Unless otherwise provided by the laws of the United States, a notice of the time, place, and purpose of every annual and special meeting of the shareholders shall be given by first-class mail, postage prepaid, mailed at least ten days prior to the date of such meeting to each shareholder of record at his or her address as shown upon the books of this Association.

    4 <u>Written Consents</u>. Any action required or permitted to be taken at an annual or special meeting of the shareholders of the Association may be taken without prior written notice and without any meeting if such action is taken by written action, containing a waiver of notice, signed by all of the shareholders entitled to vote on that action.

## ARTICLE V - CAPITAL

    1. <u>Capitalization</u>.  The amount of authorized capital stock of this Association shall be $1,122,000,000, divided into 112,200,000 shares of common stock of the par value of Ten

-2-

EXHIBIT C to Notice of Removal
Page No. 54

Dollars ($10.00) each; but said capital stock may be increased or decreased from time to time, in accordance with the provisions of the laws of the United States.

2. <u>Voting Rights</u>. Each holder of common stock of the Association shall be entitled to vote on all matters, one vote for each share of common stock held by such holder. No holder of shares of the capital stock of any class of this Association shall have any pre-emptive or preferential right of subscription to any shares of any class of stock of this Association, whether now or hereafter authorized, or to any obligations convertible into stock of this Association, issued or sold, nor any right of subscription to any thereof other than such, if any, as the Board of Directors, in its discretion, may from time to time determine and at such price as the Board of Directors may from time to time fix.

3. <u>Debt Obligations</u>. The Association, at any time and from time to time, may authorize and issue debt obligations, whether or nor subordinated, without the approval of the shareholders.

## ARTICLE VI - PERPETUAL EXISTENCE

The corporate existence of this Association shall continue until terminated in accordance with the laws of the United States.

## ARTICLE VII - INDEMNIFICATION

To the extent permitted by 12 CFR 7.2014 and consistent with the requirements of 12 USC 1828(k) and the implementing regulations thereunder:

(a) <u>Elimination of Certain Liability of Directors</u>. A director of the Association shall not be personally liable to the Association or its shareholders for monetary damages for breach of fiduciary duty as a director, except for liability (i) for any breach of the director's duty of loyalty to the Association or its shareholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the Delaware General Corporation Law, or (iv) for any transaction from which the director derived an improper personal benefit.

(b)(1) <u>Right to Indemnification</u>. Each person who was or is made a party or is threatened to be made a party to or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), by reason of the fact that he or she, or a person of whom he or she is the legal representative, is or was a director or officer of the Association or is or was serving at the request of the Association as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, whether the basis of such proceeding is alleged action or inaction in an official capacity as a director, officer, employee, or agent or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Association to the fullest extent authorized by the Delaware General Corporation Law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Association to provide broader indemnification rights than said law permitted the Association to provide prior to such amendment), against all expense, liability and loss (including attorneys' fees, judgments, fines,

-3-

EXHIBIT C to Notice of Removal
Page No. 55

ERISA excise taxes or penalties and amounts paid or to be paid in settlement) reasonably incurred or suffered by such person in connection therewith and such indemnification shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of his or her heirs, executors and administrators; provided, however, that the Association shall indemnify any such person seeking indemnification in connection with a proceeding (or part thereof) initiated by such person only if such proceeding (or part thereof) was authorized by the Board of Directors of the Association. The right to indemnification conferred in this paragraph (b) shall be a contract right and shall include the right to be paid by the Association the expenses incurred in defending any such proceeding in advance of its final disposition; provided, however, that, if the Delaware General Corporation Law requires, the payment of such expenses incurred by a director of officer in his or her capacity as a director or officer (and not in any other capacity in which service was or is rendered by such person while a director or officer, including, without limitation, service to an employee benefit plan) in advance of the final disposition of a proceeding, shall be made only upon delivery to the Association of an undertaking, by or on behalf of such director or officer, to repay all amounts so advanced if it shall ultimately be determined that such director of officer is not entitled to be indemnified under this paragraph (b) or otherwise. The Association may, by action of its Board of Directors, provide indemnification to employees and agents of the Association with the same scope and effect as the foregoing indemnification of directors and officers.

(2) Non-Exclusivity of Rights. The right to indemnification and the payment of expenses incurred in defending a proceeding in advance of its final disposition conferred in this paragraph (b) shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, provision of the Articles of Association, by-law, agreement, vote of shareholders or disinterested directors or otherwise.

(3) Insurance. The Association may maintain insurance, at its expense, to protect itself and any director, officer, employee or agent of the Association or another corporation, partnership, joint venture, trust or other enterprise against any such expense, liability or loss, whether or not the Association would have the power to indemnify such person against such expense, liability or loss under the Delaware General Corporation Law.

## ARTICLE VIII - AMENDMENT

These Articles of Association may be amended at any regular or special meeting of the shareholders by the affirmative vote of the holders of a majority of the stock of this Association, unless the vote of the holders of a greater amount of stock is required by law, and in that case by the vote of holders of such greater amount.

WFBArticles - Phase II - Final

-4-

EXHIBIT C to Notice of Removal
Page No. 56

(Page 1 of 17)

05/24/2006  23:00    8055437701          UNITED GENERAL              PAGE  02/18

RECORDING REQUESTED BY:
UNITED GENERAL TITLE
ORDER NO.: 7110- 311224

WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER: 0042516666

NOTE AMOUNT: $569,000.00

**JULIE RODEWALD**                          MEL
San Luis Obispo County ~ Clerk/Recorder    4/19/2006
Recorded at the request of                  9:00 AM
United General Title Ins Co

DOC#:   2006027008      Titles: 2    Pages:  17

| | |
|---|---|
| Fees | 82.00 |
| Taxes | 0.00 |
| Others | 0.00 |
| PAID | $82.00 |

FOR RECORDER'S USE ONLY

## DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS
PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND
AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES
AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE
RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY
PAYMENTS OF PRINCIPAL AND INTEREST.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS
$711,250.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

I.     DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
       (A)  Security Instrument. This Deed of Trust, which is dated April 6, 2006, will be called the
"Security Instrument."

       (B)  Borrower. GORDON GREENFIELD, AN UNMARRIED MAN  sometimes will be called
"Borrower" and sometimes simply "I" or "me."

       (C)  Lender. WORLD SAVINGS BANK, FSB,  ITS SUCCESSORS AND/OR ASSIGNEES, will be
called "Lender." Lender is a FEDERAL SAVINGS BANK, which is organized and exists under the laws of
the United States. Lender's address is 1901 Harrison Street, Oakland, CA 94612 .

0 0 3
LENDER'S USE ONLY

SD001A (2004-03-2)              DEED OF TRUST-ADJUSTABLE          CA
DEFERRED INTEREST                        Page 1

escription: San Luis Obispo,CA Document-Year.DocID 2006.27008 Page: 1 of 17
rder: 33 Comment:

05/24/2006  23:00   8055437701          UNITED GENERAL                    PAGE  03/18

0042516666

(D) **Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$569,000.00**, plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by April 15, 2036 ("Maturity Date").

(E) **Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

(F) **Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights In the Property" sometimes will be called the "Sums Secured."

(G) **Person.** Any person, organization, governmental authority or other party will be called "Person."

(H) **Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and Golden West Savings Association Service Co., A California Corporation is the "Trustee."

II.     **BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY**

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)     pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)     pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)     keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

III.     **DESCRIPTION OF THE PROPERTY**

I give Trustee rights in the Property described below:

(i)     The Property which is located at 110 TIERRA VISTA ROAD, PASO ROBLES, CA 93446-9702. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)     All buildings and other improvements that are located on the Described Property;

SD001B (2004-03-2)                     DEED OF TRUST-ADJUSTABLE                     CA
DEFERRED INTEREST                               Page 2

05/24/2006  23:00   8055437701            UNITED GENERAL                    PAGE  04/18

0042516666

(iii)   All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)   All rents or royalties and other income from the Described Property;

(v)   All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)   All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)   All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)   All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)   All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)   All of the amounts that I pay to Lender under Paragraph 2 below.

## IV.   BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## COVENANTS

I promise and I agree with Lender as follows:

### 1.   BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

### 2.   PAYMENTS FOR TAXES AND INSURANCE

(A)   Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

SD001C (2004-03-2)            DEED OF TRUST-ADJUSTABLE            CA
                                   Page 3

05/24/2006  23:00   8055437701          UNITED GENERAL              PAGE  03/16

**(B)   Escrow Accounts**                                                    0042516666

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

SD001D (2004-03-2)                DEED OF TRUST-ADJUSTABLE                    CA
                                        Page 4

escription: San Luis Obispo,CA Document-Year.DocID 2006.27008 Page: 4 of 17    EXHIBIT D to Notice of Removal
rder: 33 Comment:                                                              Page No. 60

05/24/2006 23:00 8055437701 UNITED GENERAL PAGE 06/18

0042516666

3. **APPLICATION OF BORROWER'S PAYMENTS**

Unless applicable law requires otherwise. Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

4. **BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a lien. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

SD001E (2004-03-2)        DEED OF TRUST-ADJUSTABLE        CA
Page 5

escription: San Luis Obispo,CA Document-Year.DocID 2006.27008 Page: 5 of 17
rder: 33 Comment:

05/24/2006  23:00    8055437701              UNITED GENERAL                    PAGE  07/18

0042516666

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

6.    BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

SD001F (2004-03-2)                        DEED OF TRUST-ADJUSTABLE                        CA
                                                  Page 6

05/24/2006  23:00    8055437701              UNITED GENERAL                  PAGE  08/18

0042516666

### 7.   LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

### 8.   LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

### 9.   AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

SD001Q (2004-03-2)                      DEED OF TRUST-ADJUSTABLE                        CA
                                              Page 7

0042516666

**10.    CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

**(A)    Borrower's Obligations**

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

**(B)    Lender's Rights**

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

**11.    OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

**12.    MAXIMUM LOAN CHARGES**

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

SD001H (2004-03-2)                     DEED OF TRUST-ADJUSTABLE                        CA
                                              Page 8

05/24/2006  23:00   8055437701          UNITED GENERAL                PAGE  18/18

0042516666

13.    LEGISLATION AFFECTING LENDER'S RIGHTS
      If a change in applicable law would make any provision of the Secured Notes or this Security
Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by
this Security Instrument.

14.    NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT
      Any notice that must be given to me under this Security Instrument will be given by delivering it or by
mailing it by first class mail unless applicable law requires use of another method. The notice will be
addressed to me at 110 TIERRA VISTA ROAD, PASO ROBLES, CA 93446-9702. A notice will be given to
me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of
my alternative address in writing or by calling Lender's customer service telephone number provided on my
billing statement. I may designate only one mailing address at a time for notification purposes. Except as
permitted above for changes of address, any notice that must be given to Lender under this Security
Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above
entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different
address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered
according to the requirements of this Paragraph 14 or of applicable law.

15.    GOVERNING LAW; SEVERABILITY
      This Security Instrument and the Secured Notes shall be governed by and construed under
federal law and federal rules and regulations, including those for federally chartered savings
institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the
jurisdiction in which the Property is located. In the event that any of the terms or provisions of this
Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to
be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted
and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

16.    BORROWER'S COPY
      I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security
Instrument.

17.    LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE
      PROPERTY
      If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons
authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental
payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession
of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If
Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this
Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i)
Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me
for my permission to do so.

      If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I
understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I
shall have no right to occupy the Property after such sale without the written consent of the new owner of the
Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary
damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

SD001I (2004-03-2)              DEED OF TRUST-ADJUSTABLE                      CA
                                      Page 9

0042516666

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

### 18.   INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

### 19.   CLERICAL ERRORS

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

### 20.   LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

### 21.   WAIVER OF STATUTE OF LIMITATIONS

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

### 22.   CAPTIONS

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

### 23.   MODIFICATION

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

### 24.   CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

(A)     If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

SD001J (2004-03-2)                    DEED OF TRUST-ADJUSTABLE                    CA
                                           Page 10

05/24/2006  23:00   8055437701                UNITED GENERAL                    PAGE  12/18

0042516666

**(B)**     The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

**(C)**     If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a master or blanket policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such master or blanket policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such master or blanket policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

**(D)**     I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the master or blanket hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

## 25.    FUTURE ADVANCES

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

SD001K (2004-09-2)                    DEED OF TRUST-ADJUSTABLE
                                           Page 11                                              **CA**

0042516666

**26.    AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

<u>Acceleration of Payment of Sums Secured.</u> Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

<u>Exception to Acceleration of Payment of Sums Secured.</u> If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)    Lender approves the creditworthiness of the transferee in writing;

(iii)    transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the then outstanding balance of Principal and Interest under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

**27.    SUBSTITUTION OF TRUSTEE**

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

SD001L (2004-03-2)                    DEED OF TRUST-ADJUSTABLE                    CA
                                              Page 12

05/24/2006  23:00    8055437701          UNITED GENERAL          PAUL  14/18

0042516666

**28.    RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

**29.    RECONVEYANCE**

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

**30.    STATEMENT OF OBLIGATION**

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

SD001M (2004-03-2)              DEED OF TRUST-ADJUSTABLE              CA
                                      Page 13

(Page 14 of 17)

05/24/2006  23:00    8055437701         UNITED GENERAL              PAGE  15/18

0042516666

**31.    ( X )  QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) if I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**32.    ( X )  OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

**( X )  VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

SD001N (2004-03-2)              DEED OF TRUST-ADJUSTABLE              CA
                                    Page 14

05/24/2006  23:00    8055437701                UNITED GENERAL                    PAGE  15/16

0042516666

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____ (Seal)

GORDON GREENFIELD

**ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT**

SD001 (2004-03-1)      [AF] (2004-03-1)            Page 15                      CA
                       [AL] (2004-03-1)

(Page 16 of 17)

05/24/2006   23:00      8055437701            UNITED GENERAL                    ГНОГ   ...

## Acknowledgment

State of _California_            )
County of _San Luis Obispo_      ) ss.

On _April 11th 2006_, before me, _Kari L. Perry_, personally appeared _Gordon Greenfield_ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s). acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Kari L. Perry_

JurisDocuments.com

KARI L. PERRY
Commission #1489787
Notary Public
California
SAN LUIS OBISPO COUNTY
My Commission Expires May 18, 2008

05/24/2006   23:00      8055437701              UNITED GENERAL                  PAGE  18/18

Title Order Number:

File Number:      7110-311224

## Exhibit "A"

Real property in the unincorporated area of the County of San Luis Obispo, State of California, described as follows:

PARCEL 1 OF PARCEL MAP NO. CO-8-100 IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO MAP RECORDED SEPTEMBER 28, 1984 IN BOOK 35, PAGE 78 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 018-051-012

**END OF DOCUMENT**

1

## CERTIFICATE OF SERVICE

2

I, the undersigned, declare that I am over the age of 18 and am not a party to this

3
action. I am employed in the City of Pasadena, California; my business address is Anglin,
Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600,

4
Pasadena, California 91101-2459.

5
On the date below, I served a copy of the following document(s): **NOTICE OF
REMOVAL BY DEFENDANT WACHOVIA PURSUANT TO 28 U.S.C. §1332**

6
**[DIVERSITY JURISDICTION]**

7
on all interested parties in said case addressed as follows:

8
Served Electronically via Court's CM/ECF System:

9

10
*Served by Other Means:*

| *Attorneys for Plaintiff* | *Attorneys for NDeX LLC* |
|---|---|
| Adam R. Fairbairn<br>819-12[th] Street<br>Paso Robles, CA 93446<br>*Tel: 805.238.7688; Fax: 805.238.7497* | Edward Treder; Deepika S. Saluja<br>BARRETT DAFFIN FRAPPIER<br>TREDER & WEISS, LLP<br>20955 Pathfinder Road, Suite 300<br>Diamond Bar, CA 91765<br>*Tel: 626.915.5714;Fax: 909.595.7640* |

16
☒     **BY MAIL:**   By placing the envelope for collection and mailing following our ordinary

17
business practices. I am readily familiar with the firm's practice of collecting and processing
correspondence for mailing. On the same day that correspondence is placed for collection and

18
mailing, it is deposited in the ordinary course of business with the United States Postal Service
in Pasadena, California, in sealed envelopes with postage fully thereon.

19
☒     **FEDERAL:**   I declare under penalty of perjury under the laws of the United States of

20
America that the foregoing is true and correct. I declare that I am employed in the office of a
member of the Bar of this Court at whose direction the service was made. This declaration is

21
executed in Pasadena, California, on **January 11, 2011.**

22

23
Helene Saller                                                              _____

24
(Print name)                                                                (Signature)

25

26

27

28

W:\LITIG\95451\000562\00089006.DOC                          1

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
Gordon M. Greenfield

**DEFENDANTS**
Wells Fargo Bank, N.A., a national association; NDEX West, LLC, a Delaware limited liability company, and Does 1 to 10, inclusive

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) Adam R. Fairbairn
819 - 12th Street, Suite 211
Paso Robles, CA 93446
Tel: 805.238.7688

Attorneys (If Known)
Robert A. Bailey; Sharon K. Brown
Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP
199 S. Los Robles Ave., Suite 600
Pasadena, CA 91101 / Tel: 626.535.1900

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff      ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding   ☒ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☐ Yes  ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No      ☒ MONEY DEMANDED IN COMPLAINT: $ unspecified

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. section 1332; Diversity Jurisdiction

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☒ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety/Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number:

CV11 0353

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**CIVIL COVER SHEET**

Martin Dean's
ESSENTIAL FORMS™

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  [X] No  [ ] Yes

If yes, list case number(s):

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  [X] No  [ ] Yes

If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)
[ ] A. Arise from the same or closely related transactions, happenings, or events; or
[ ] B. Call for determination of the same or substantially related or similar questions of law and fact; or
[ ] C. For other reasons would entail substantial duplication of labor if heard by different judges; or
[ ] D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
[ ] Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Luis Obispo | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
[ ] Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Wells Fargo Bank, N.A. -- South Dakota |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Luis Obispo | |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): *Sharon K. Brown*    Date  January 11, 2011

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |



1

## CERTIFICATE OF SERVICE

    I, the undersigned, declare that I am over the age of 18 and am not a party to this action.  I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California  91101-2459.

    On the date below, I served a copy of the following document(s):

### CIVIL COVER SHEET

on all interested parties in said case addressed as follows:

Served Electronically via Court's CM/ECF System:

### *Served by Other Means:*

| *Attorneys for Plaintiff* | *Attorneys for NDeX LLC* |
|---|---|
| Adam R. Fairbairn<br>819-12th Street<br>Paso Robles, CA 93446<br>*Tel: 805.238.7688; Fax: 805.238.7497* | Edward Treder; Deepika S. Saluja<br>BARRETT DAFFIN FRAPPIER<br>TREDER & WEISS, LLP<br>20955 Pathfinder Road, Suite 300<br>Diamond Bar, CA  91765<br>*Tel: 626.915.5714;Fax: 909.595.7640* |

☒    **BY MAIL:**  By placing the envelope for collection and mailing following our ordinary business practices.  I am readily familiar with the firm's practice of collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in Pasadena, California, in sealed envelopes with postage fully thereon.

☒    **FEDERAL:**  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.  This declaration is executed in Pasadena, California, on **January  , 2011.**

Helene Saller
(Print name)

(Signature)

1

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge George H. Wu and the assigned discovery Magistrate Judge is Alicia G. Rosenberg.

The case number on all documents filed with the Court should read as follows:

## CV11- 353 GW (AGRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[_] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[_] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.